FRANCISCO RAMOS GONZÁLEZ y OTROS, demandantes y recurrentes, *v.* FRANCISCA FÉLIX MEDINA y OTROS, demandados y recurridos.

*Número:* R-83-599 *Resuelto:* 13 de mayo de 1988

*Reinaldo Fernández Negrón,* abogado de los recurrentes; *Frank Gotay Barquet,* de *Feldstein, Gelpi & Hernández,* abogado del recurrido José Ramón González; *Eliezer Aldarondo Ortiz,* de *Aldarondo & López Bras,* abogado del recurrido Manuel Ramos Rivera, y *José D. Rivera Ortiz,* abogado de los recurridos Perfecto Cruz Laureano, María Laureano de Cruz y la Sociedad de Gananciales compuesta por ambos.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Este caso plantea cuestiones sensitivas referentes a la figura de cosa juzgada y sus excepciones. En específico, analizamos el efecto que tiene en esta jurisdicción una sentencia desestimatoria por inacción dictada por el Tribunal Federal de los Estados Unidos para el Distrito de Puerto Rico.

I

Francisco Ramos González y su esposa María Reyes Santiago residían en una casa de su propiedad, sita la misma en una finca de trece (13) cuerdas de terreno, sobre la cual pesaba un gravamen de $650. La finca fue subastada en un procedimiento de ejecución de hipoteca y fue adjudicada a favor

de Bernardo Mártir y su esposa, Sofía López, y el Lcdo. Norman Pardo y su esposa, Helen Hernández Dapena. Éstos a su vez vendieron el bien inmueble al alguacil Perfecto Cruz Laureano y su esposa, Marta Laureano de Cruz.

El 11 de diciembre de 1978, el señor Cruz Laureano y sus compañeros alguaciles del Tribunal General de Justicia, José Ramón González y Manuel Ramos Rivera, alegadamente se personaron en la residencia del señor Ramos González y su esposa con una copia fotostática del acta de subasta. Se alega que los alguaciles alteraron la misma sin autorización para ello, haciendo constar al dorso de la copia la frase "mandamiento de desahucio".

Según la versión de los demandantes, esposos Ramos-Reyes, luego de que se suscitara un debate sobre la titularidad de la casa en la que vivían junto a sus catorce (14) hijos, y sobre los sembradíos existentes en la finca, los referidos alguaciles procedieron a herir de bala al señor Ramos González y a golpear a su esposa y un hijo menor. También destruyeron el techo de la vivienda. Procedieron, entonces, a arrestar a los cónyuges y a trasladarlos al Hospital Regional del Distrito de Caguas, donde les dejaron abandonados.[1]

Como resultado de estos hechos Francisco Ramos González, su esposa María Reyes Santiago y la Sociedad Legal de Gananciales compuesta por ambos presentaron el caso Civil Núm. 79-7657 en el Tribunal Superior de Puerto Rico, Sala

[1] Surge de autos que por dicho incidente, el codemandado, alguacil Perfecto Cruz Laureano, fue convicto por dos (2) delitos de agresión agravada (casos criminales Núms. M79-440 y M79-441) el día 28 de enero de 1980 en el Tribunal Superior, Sala de Caguas.

Por su parte, el alguacil José Ramón González fue destituido de su puesto el 26 de febrero de 1979 por el entonces Director Administrativo de los Tribunales, Lcdo. Eulalio A. Torres. Tomamos conocimiento judicial de los autos del caso Núm. O-85-399, donde nos negamos a revisar esa sanción disciplinaria. Regla 11(A)(2) de Evidencia, 32 L.P.R.A. Ap. IV, y comentario oficial; *Archevali v. E.L.A.*, 110 D.P.R. 767, 770 (1981); E.L. Chiesa, *Práctica Procesal Puertorriqueña, Evidencia*, San Juan, Pubs. J.T.S., 1983, Vol. I, Cap. II, págs. 34-36.

de San Juan, el día 7 de diciembre de 1979. En la demanda radicada figuran como demandados Bernardo Mártir y su esposa Sofía López; Norman Pardo y su esposa Helen Hernández Dapena; Perfecto Cruz Laureano y su esposa Marta Laureano de Cruz, y sus respectivas Sociedades de Bienes Gananciales; Francisca Félix Medina; Herminio Veguilla Ruiz; José Ramón González; Manuel Ramos Rivera; Anastacio Martínez Tirado; el Estado Libre Asociado de Puerto Rico, y la Administración de los Tribunales del Estado Libre Asociado de Puerto Rico. Solicitaron los demandantes la suma de $500,000, por concepto de daños y perjuicios, y además, que se condenara a los codemandados Perfecto Cruz Laureano y Marta Laureano de Cruz, y a la Sociedad Legal de Gananciales compuesta por éstos, a pagar la suma de $46,500 por las propiedades muebles e inmuebles de los demandantes que ambos se apropiaron ilegalmente.

Tres (3) días más tarde, el 10 de diciembre de 1979, el señor Ramos González y su esposa presentaron la acción en daños, caso Civil Núm. 79-2837, en el Tribunal Federal de Distrito de los Estados Unidos para el Distrito de Puerto Rico. El caso fue radicado al amparo del Código de Estados Unidos, 42 U.S.C. secs. 1981, 1983, 1985 y 1986. En dicha acción los demandantes alegaron que los hechos antes relatados constituían una violación a sus derechos civiles bajo las Enmiendas IV, V, IX y XIV, Const. E.U., L.P.R.A., Tomo 1. Figuraron como demandados en el pleito federal los Srs. Perfecto Cruz Laureano, José Ramón González y Manuel Ramos Rivera, en su carácter personal y como alguaciles del Tribunal Superior de Puerto Rico; el Hon. Miguel Giménez Muñoz, como Secretario de Justicia de Puerto Rico; el Hon. Carlos Romero Barceló, como Gobernador del Estado Libre Asociado de Puerto Rico, y el Hon. José Trías Monge, en su carácter de Juez Presidente del Tribunal Supremo de Puerto Rico y, por lo tanto, "máxima autoridad de la Oficina de Ad-

ministración de los Tribunales" a la que estaban adscritos los alguaciles demandados.

Como puede apreciarse, se trata de la presentación en foros distintos de dos (2) demandas que tienen en común unos hechos u ocurrencia que dan base a una solicitud de remedios al amparo de un estatuto federal y otro estatal, y en las que solamente los codemandados Perfecto Cruz Laureano, José Ramón González y Manuel Ramos Rivera figuran como tales en ambos pleitos. Sus respectivas esposas y Sociedades Gananciales sólo han sido incluidas como partes demandadas en el pleito ante el Tribunal Superior de Puerto Rico.

El 8 de mayo de 1981, el Tribunal de Distrito Federal, por voz de la Hon. Juez Carmen Consuelo Vargas de Cerezo, dictó sentencia en el caso presentado ante dicho foro desestimando la demanda debido a la inacción de la parte demandante (*lack of prosecution*). Apéndice, pág. 36.

Así las cosas, los alguaciles codemandados Perfecto Cruz Laureano, José Ramón González y Manuel Ramos Rivera, y las codemandadas Marta Laureano de Cruz y la Sociedad Legal de Gananciales compuesta por ésta y por Perfecto Cruz Laureano, solicitaron la desestimación sumaria de la demanda incoada en el Tribunal Superior de Puerto Rico, bajo el fundamento de cosa juzgada.

En síntesis, la alegación de los codemandados fue a los efectos de que la desestimación por inacción de la acción radicada por los demandantes en el Tribunal de Distrito federal tiene el efecto de una adjudicación en los méritos, y por lo tanto, de cosa juzgada sobre la acción radicada en su contra por los demandantes en el Tribunal Superior de Puerto Rico. De otro lado, los demandantes alegaron que no era aplicable la doctrina de cosa juzgada invocada por los codemandados, ya que no se cumplieron los requisitos que, para la aplicación de la misma, exigen la ley y la jurisprudencia.

El 8 de noviembre de 1983, el Tribunal Superior dictó sentencia sumaria parcial en la que acogió el planteamiento de los codemandados. En su virtud, desestimó con perjuicio la demanda en cuanto a los codemandados José Ramón González, Manuel Ramos Rivera, Perfecto Cruz Laureano y Marta Laureano de Cruz, y la Sociedad Legal de Gananciales compuesta por estos últimos. Ya anteriormente, con fecha de 24 de febrero de 1982 y por otros fundamentos, se había desestimado la demanda en cuanto a los codemandados Herminio Veguilla Ruiz y Francisca Félix Medina. Véase Sentencia Parcial, en autos, dictada en dicha fecha. Apéndice, pág. 38.

Inconformes, los demandantes han recurrido ante nos. Consideran errónea la determinación del tribunal a quo de adscribir consecuencia de cosa juzgada a la sentencia desestimatoria del tribunal federal. Acordamos expedir el auto solicitado.

Procede determinar: (1) si la sentencia de desestimación por inacción dictada por el Tribunal de Distrito federal tiene el efecto de una adjudicación en los méritos y (2) si tal adjudicación impide total o parcialmente la litigación del pleito incoado en el foro local.

## II

El caso instado por los demandantes recurrentes en el foro federal fue desestimado por no haber éstos realizado trámite alguno por un período de ocho (8) meses y ante· la ausencia de excusas por dicha inacción (*lack of prosecution*). La Regla 41(b) de Procedimiento Civil federal, 28 U.S.C., autoriza este tipo de desestimación. El texto de esta regla es similar al de la Regla 39.2 de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. III. Reza de la siguiente forma:

*Rule 41. Dismissal of Actions*

. . . . . . . .

(b) *Involuntary Dismissal: Effect Thereof. For failure of*

*the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.* After the plaintiff, in an action tried by the court without a jury, has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). *Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule*, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, *operates as an adjudication upon the merits.* (Énfasis suplido.)

Cuando el fundamento para la desestimación es la inacción de la parte que instó el pleito, los tribunales federales tienen un poder inherente, independiente de cualquier estatuto o regla, para decretar la misma *sua sponte. Link v. Wabash Railroad Co.*, 370 U.S. 626, 629–633 (1962). Véase, también, *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980). Una desestimación bajo la Regla 41(b) de Procedimiento Civil federal, *supra*, o cualquier otra desestimación provista por la Regla 41 tendrá el efecto de una adjudicación en los méritos, a menos que el tribunal en su orden de desestimación lo disponga de otro modo o que la desestimación se haya decretado por falta de jurisdicción, competencia territorial inadecuada (*improper venue*) o por dejar de acumular a una parte bajo la Regla 19 de Procedimiento Civil federal, 28 U.S.C. *Esto es, salvo las excepciones señaladas, la desestimación será con perjuicio. 9 Wright & Miller, Federal Practice and Procedure* Sec. 2373 (1971); Poore & Koeber, *Cyclopedia of Federal Procedure*, 3ra ed., Callaghan & Co.,

1967, pág. 111; 5 *Moore's Federal Practice* Sec. 41.14, pág. 41-185 *et seq.* (1984).

■ En adición a la Regla 41(b) de Procedimiento Civil federal, *supra*, y el poder inherente para manejar sus asuntos en forma ordenada y rápida, los tribunales de distrito federales, amparados en la Regla 83 de Procedimiento Civil federal, 28 U.S.C., pueden regular y controlar en alguna medida las desestimaciones por inacción y sus efectos. Poore & Koeber, *op. cit.*, Sec. 29.16, págs. 102–103; *Moore's Federal Practice*, supra, pág. 41-111. Tal regulación se contempla en las reglas locales de muchos tribunales federales de distrito, 27 *Fed. Proc. L. Ed.* Sec. 62:503, pág. 617, n. 57 (1984), y pueden incluso disponer una desestimación automática cuando no se ha tomado acción dentro de un período prescrito de tiempo. *Moore's Federal Practice*, supra.

■ En muchos tribunales federales de distrito, las desestimaciones por inacción son reconocidas y hasta cierto punto controladas por las reglas locales de esos tribunales (*District Court Local Rules*). Éstas pueden disponer que la desestimación por inacción sea *sin perjuicio*. Poore & Koeber, *op. cit.* Ante una reglamentación local de tal naturaleza, una desestimación por inacción que no especifique en la sentencia si la misma es con o sin perjuicio, se deberá entender que es una sin perjuicio. Véanse: *Zaroff v. Holmes*, 379 F.2d 875 (D.C. Cir. 1967); *Moore's Federal Practice*, supra, pág. 41-195, n. 15. Véase, también, 27 *Fed. Proc. L. Ed.* Sec. 62:527, págs. 645–646.

■ Hemos examinado las reglas locales del Tribunal de Distrito Federal para el Distrito de Puerto Rico (*U.S. District Court Local Rules — Puerto Rico*). Al momento de dictarse la orden de desestimación por inacción en el caso Núm.

79-2857, las reglas vigentes (*Rule 7*) no contemplaban ni disponían efecto alguno para las desestimaciones por inacción. *Ante tal situación, procede concluir que el efecto que tuvo la orden es el que contempla la Regla 41(b) de Procedimiento Civil federal, supra; esto es, el de una adjudicación en los méritos con perjuicio.* Debe señalarse, sin embargo, el cambio introducido por las nuevas reglas locales del Tribunal de los Estados Unidos para el Distrito de Puerto Rico, efectivas desde 1ro de noviembre de 1984. La Regla 313.2, 2 *Fed. Local Ct. Rules*, R. 313.2, pág. 21 (1987) (*United States District Court for the District of Puerto Rico*), expresamente señala que las desestimaciones por inacción no se entenderán como una adjudicación en los méritos, salvo que otra cosa se disponga por el tribunal o por alguna sección de tales reglas.

■ Se ha señalado que una desestimación con perjuicio es una sanción drástica que debe ser aplicada solamente en situaciones extremas que presenten un récord claro de atrasos y conducta contumaz. Poore & Koeber, *op. cit.* (1984 Cum. Supp.), pág. 34; 27 *Fed. Proc. L. Ed.* Sec. 62:504, pág. 619 (1984); *Moore's Federal Practice*, supra, Sec. 41.11, pág. 41-107 *et. seq.* Véanse: *Sheaffer v. Warehouse Employees Union, Local No. 730*, 408 F.2d 204, 206 (D.C. Cir.), *cert.* denegado, 395 U.S. 934 (1969); *Asociación de Empleados, etc. v. Rodríguez Morales*, 538 F.2d 915, 917 (1er Cir. 1976); *Marshall v. Sielaff*, 492 F.2d 917, 918 (3er Cir. 1974); *Krodel v. Houghtaling*, 468 F.2d 887 (4to Cir. 1972); *Hejl v. State of Tex.*, 664 F.2d 1273, 1274 (5to Cir.), *cert.* denegado, 456 U.S. 933 (1982); *Johnson v. Hubbard*, 698 F.2d 286, 290 (6to Cir. 1983); *Locascio v. Teletype Corp.*, 694 F.2d 497, 499 (7mo Cir. 1982), *cert.* denegado, 461 U.S. 906 (1983); *Moore v. St. Louis Music Supply Co., Inc.*, 539 F.2d 1191, 1193 (8vo Cir. 1976); *Raiford v. Pounds*, 640 F.2d 944, 945 (9no Cir. 1981); *Meeker*

*v. Rizley*, 324 F.2d 269, 271 (10mo Cir. 1963); *State Exchange Bank v. Hartline*, 693 F.2d 1350, 1352 (11mo Cir. 1982).(²)

Como indicáramos anteriormente, la desestimación del pleito incoado en el foro federal por los aquí demandantes recurrentes tuvo el efecto de una adjudicación en los méritos, esto es, una desestimación con perjuicio. La revisión de tal decreto, a fin de que se determinara si el mismo era un ejercicio válido de discreción judicial, nunca fue solicitada por la parte demandante, convirtiéndose la sentencia en final y firme. Así se desprende de los escritos radicados por las partes. No tenemos que especular si un tribunal federal apelativo, movido por las circunstancias particulares del caso y por la jurisprudencia federal antes citada, hubiera revocado tal desestimación o su efecto "perjudicial". Desconocemos los detalles del pleito federal y de todas formas no

---

(²) La negativa de un tribunal federal a emplear esas sanciones menos drásticas, en ausencia de contumacia o dejadez extrema de la parte afectada, constituye una privación al derecho constitucional a ser oído, corolario del debido proceso de ley. *Societe Internationale v. Rogers*, 357 U.S. 197, 209 (1958). Por eso, aunque de ordinario una parte no puede escapar a las consecuencias de las actuaciones u omisiones de su abogado, es preferible que sea éste el sancionado por ellas y no su representado, a menos, repetimos, que el cliente tenga conocimiento de la conducta de su representante, o la misma demuestre grave rebeldía o negligencia de su parte. Cuando estos errores se deben al abogado, y no a su cliente, es preferible emplear sanciones que no afecten el derecho de este último a tener un juicio en sus méritos. Ejemplos de estas penalidades son la desestimación sin perjuicio, la posposición de la vista del caso y las multas al abogado. 9 *Wright & Miller, Federal Practice and Procedure* Sec. 2369, págs. 193–198 (1971).

Ante estas implicaciones constitucionales, no es de extrañar que hayamos incorporado esta norma en esta jurisdicción. *Maldonado v. Srio. de Rec. Naturales*, 113 D.P.R. 494, 498 (1982); *Garriga Gordils v. Maldonado Colón*, 109 D.P.R. 817, 822–823 (1980); *Arce v. Club Gallístico de San Juan*, 105 D.P.R. 305, 307–308 (1976); *Srio. del Trabajo v. Mayagüez O.M. Club*, 105 D.P.R. 279, 283 (1976); *Acevedo v. Compañía Telefónica de P.R.*, 102 D.P.R. 787, 792 (1974); *Ortiz Rivera v. Agostini*, 92 D.P.R. 187, 192–194 (1965); *Ramírez de Arellano v. Srio. de Hacienda*, 85 D.P.R. 823, 830 (1962). Esta visión responde al propósito de nuestro ordenamiento de hallar la verdad y hacer justicia. *García Negrón v. Tribunal Superior*, 104 D.P.R. 727, 729 (1976). A su vez, con la imposición de las sanciones ya señaladas, se promueve la descongestión del calendario judicial y la rapidez en los procedimientos. Este es otro propósito cardinal de nuestro sistema procesal civil.

somos nosotros los llamados a hacer una evaluación sobre el ejercicio de discreción de un tribunal federal que se ampara en su poder inherente para manejar sus propios asuntos a fin de lograr una rápida y ordenada disposición de los casos. Tampoco podemos, en ausencia de razones válidas informadas, denegarle entera fe y crédito a la sentencia dictada por el tribunal federal y a los efectos que la misma pudiera tener en nuestra jurisdicción. Art. IV, Sec. 1 de la Constitución de Estados Unidos, 28 U.S.C. sec. 1738.[3]

Resumiendo, a la luz de los antes expuesto, *tenemos que concluir que la sentencia dictada por el tribunal federal es correcta y válida y constituye una adjudicación en los méritos del litigio*. Ello nos lleva entonces a considerar nuestra segunda interrogante inicial. ¿Impide la adjudicación por el foro federal que el presente litigio sea resuelto en sus méritos en la esfera local?

### III

■ A. Se ha resuelto en la jurisdicción federal que una desestimación con perjuicio hecha al amparo de la Regla 41(b) de Procedimiento Civil federal, *supra*, tiene el alcance de cosa juzgada, por lo que impide pleitos subsiguientes entre las mismas partes o sus representantes (*privies*) basados en la misma causa de acción. *Cleveland v. Higgins*, 148 F.2d 722, 723 (2do Cir.), *cert.* denegado, 326 U.S. 722 (1945);

---

[3] El Art. IV, Sec. 1 de la Constitución de los Estados Unidos, 28 U.S.C. sec. 1738, opera entre estados y no regula el valor que los tribunales federales deben dar a los actos públicos, documentos y procedimientos judiciales de los estados. Éstos reciben entera fe y crédito de los tribunales federales por mandato de una ley del Congreso. 28 U.S.C. sec. 1738. El respeto que le deben los tribunales estatales a las sentencias federales no está basado en ley alguna. Sin embargo, la red de tribunales federales y estatales ha aceptado darle entera fe y crédito a las sentencias emitidas por los tribunales federales. Se ha asumido que es una regla de valor incuestionable, y tan temprano como en 1865, en Tribunal Supremo federal dio por sentado que la regla existe. *Dupasseur v. Rochereau*, 88 U.S. (21 Wall.) 130 (1874).

*Freedman v. American Export Isbrandtsen Lines, Inc.*, 451 F.2d 157, 158 (3er Cir.), *cert.* denegado, 405 U.S. 922 (1971); *Hubbard v. Baltimore & O.R. Co.*, 249 F.2d 886, 887 (6to Cir. 1957); *Kotakis v. Elgin, Joliet & Eastern Railway Co.*, 520 F.2d 570, 576 (7mo Cir.), *cert.* denegado, 423 U.S. 1016 (1975); *Engelhardt v. Bell & Howell Co.*, 327 F.2d 30, 32 (8vo Cir. 1964); *Stewart Securities Corp. v. Guaranty Trust Co.*, 597 F.2d 240 (10mo Cir. 1979); *Wright & Miller*, supra, Vol. 18, Sec. 4440, pág. 362 *et seq.*; 27 *Fed. Proc. L. Ed.* Sec. 62:521, pág. 641; 21 *Fed. Proc. L. Ed.* Sec. 51:198, págs. 594–595; *Moore's Federal Practice*, supra, Sec. 41.14, pág. 41-196.[4] Hemos llegado a igual conclusión bajo nuestra Regla 39.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III. *Souchet v. Cosío*, 83 D.P.R. 758 (1961).

Invocada la defensa de cosa juzgada a base de una sentencia federal, es necesario evaluar el impacto de esa sentencia en un pleito local. El planteamiento nos lanza de lleno al complejo mundo de la doctrina de *res judicata* en el contexto del sistema judicial federal, en el que funcionan procedimientos duales y se entrelazan derechos sustantivos, y en el que existen reglas particulares a cada jurisdicción que determinan la existencia y alcance de esta doctrina o defensa.

En Puerto Rico, el asunto presenta particularidades que no están presentes en otras jurisdicciones de los Estados Unidos. Es conocido que nuestra norma de *res judicata* proviene del Derecho Civil. Art. 1204 del Código Civil, 31 L.P.R.A. sec. 3343, y Art. 421 de la Ley de Evidencia, 32 L.P.R.A. sec. 1793. *Lausell Marxuach v. Díaz de Yáñez*, 103

---

[4] Aun cuando la desestimación decretada al amparo de la Regla 41(b) de Procedimiento Civil federal, 28 U.S.C., sea "con perjuicio", como ninguno de los hechos ha sido adjudicado, la sentencia, aunque sí impide un segundo pleito entre las mismas partes o sus representantes (*privies*) basado en la misma causa de acción, no establecería hechos a raíz de los cuales pudiera ser invocada la doctrina de impedimento colateral (*issue preclusion*). *Lawlor v. National Screen Service*, 349 U.S. 322, 327 (1954); *Wright & Miller*, supra, Vol. 18, Sec. 4440.

D.P.R. 533, 535 (1975), cuestionado en *Republic Sec. Corp. v. Puerto Rico Aqueduct, etc.*, 674 F.2d 952, 955–956 n. 4 (1er Cir. 1982). De ordinario, es innecesario acudir a las fuentes del derecho común para analizar esta figura, excepto para fines comparativos. *A & P Gen. Contractors v. Asoc. Caná*, 110 D.P.R. 753, 762–764 (1981); *Lausell Marxuach v. Díaz de Yáñez*, ante. Hoy reafirmamos ese método de análisis.

Sin embargo, cuando nos enfrentamos al planteamiento de que una sentencia dictada por el foro federal, alegadamente, constituye cosa juzgada en relación con un pleito incoado en la jurisdicción local, entran en juego consideraciones ajenas a esa estirpe civilista.

■ Está claramente establecido que cuando la decisión federal se dicta al amparo de una reclamación o asunto federal, la norma o doctrina de cosa juzgada que controla el asunto en el Estado, como fuente de ley al respecto, *es la federal*. Esto es así para preservar la supremacía y finalidad de la decisión inicial basada en las leyes del foro que la dictó. *Stoll v. Gottlieb*, 305 U.S. 165, 170–171 (1938); *Deposit Bank v. Frankfort*, 191 U.S. 499, 517–520 (1903); *Seven Elves, Inc. v. Eskenazi*, 704 F.2d 241, 243–244 n. 2 (5to Cir. 1983); 2 *Restatement Second of Judgments* Sec. 87 (1982); 18 *Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters (Res Judicata)* Sec. 4468, págs. 656–657 (1981); R.C. Casad, *Symposium: Preclusion in a Federal System: Introduction*, 70 Cornell L. Rev. 599 (1985).

■ Ahora bien, las autoridades están divididas en cuanto a cuál es la regla o doctrina de *res judicata* a aplicarse en la situación en que la decisión federal previa fue emitida en un caso en que el tribunal federal asumió jurisdicción por razón de diversidad de ciudadanía. Existía una "vieja" regla a los efectos de que el impacto de una sentencia de un tribunal federal por diversidad de ciudadanía se regía

por la norma estatal de *res judicata*. Hoy en día las autoridades están divididas al respecto. Véanse: *Wright & Miller*, supra, págs. 656, 732; R.E. Degnan, *Federalized Res Judicata*, 85 Yale L.J. 741, 769 (1976); *Moore's Federal Practice, Res Judicata and Related Doctrines*, 2da ed., Sec. 0.406(1), pag. 272.

En el caso de autos, el tribunal federal adjudicó una acción bajo una ley federal: 42 U.S.C. sec. 1983.[5] *Así pues, resulta evidente que el impacto de ese dictamen sobre el presente caso debe ser evaluado bajo las normas federales de res judicata.*

---

[5] En *Allen v. McCurry*, 449 U.S. 90, 95 (1980), el Tribunal Supremo señaló que no existía historial legislativo que permitiera sostener que a los casos instados bajo 42 U.S.C. sec. 1983 no les aplica la doctrina de cosa juzgada. Véase, también, *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 80–85 (1984). Por el contrario, la aplicación de esa doctrina es indispensable en el sistema federalista.

"A Constitution that requires state courts to give full faith and credit to the judgments of other state courts could not contemplate that state courts should be free to disregard the judgments of federal courts. The lack of any express provision for such faith and credit may reflect the compromise that left it to Congress to determine whether to establish inferior federal courts. If the gap must be filled, several portions of the Constitution can be invoked. Article III creates a 'judicial power' to decide various classes of 'cases' and 'controversies.' Some minimal element of finality can be read into a 'case or controversy' doctrine. More important, the notion of judicial power itself embraces the authority to enter judgments that command the broader res judicata effects that were familiar at the time of the Constitution. Through the Supremacy Clause, Article III provides a sufficient text for binding state courts." (Notas al calce omitidas.) 18 *Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters (Res judicata)* Sec. 4468, pág. 649 (1981).

Por eso, si un tribunal estatal se niega a conferir efectos de cosa juzgada a una sentencia federal la parte afectada puede recurrir al tribunal federal para que éste, en protección de su sentencia, emita un *injunction* contra el tribunal estatal. 28 U.S.C. sec. 2283. El *injunction* puede ser obtenido antes que el tribunal estatal decida si hay *res judicata*, mas no después. *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518 (1986). Después que el estado ha dictado sentencia, puede apelarse de la misma a través de los tribunales del estado, y al Tribunal Supremo federal, por *certiorari. Parsons Steel, Inc. v. First Alabama Bank*, ante.

**B.** La doctrina federal de *res judicata* impide que se relitigue cualquier aspecto de la causa de acción *incluyendo cualquier otra acción o defensa que debió o pudo haber sido planteada en el pleito en que ha recaído la primera sentencia.* La norma ha sido definida de forma apropiada:

> *The rules of res judicata,* as the term is sometimes sweepingly used, *actually comprise two doctrines concerning the preclusive effect of a prior adjudication. The first such doctrine is "claim preclusion," or true res judicata. It treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same "claim" or cause of action.".* . . When the plaintiff obtains a judgment in his favor, his claim "merges" in the judgment; he may seek no further relief on that claim in a separate action. Conversely, when a judgment is rendered for a defendant, the plaintiff's claim is extinguished; the judgment then acts as a "bar". . . .
>
> . . . *The aim of claim preclusion is thus to avoid multiple suits on identical entitlements or obligations between the same parties, accompainied, as they would be, by the redetermination of identical issues of duty and breach.*
>
> *The second doctrine, collateral estoppel or "issue preclusion," recognizes that suits addressed to particular claims may present issues relevant to suits on other claims.* In order to effectuate the public policy in favor of minimizing redundant litigation, *issue preclusion bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties.* . . . It is insufficient for the invocation of issue preclusion that some question of fact or law in a later suit was relevant to a prior adjudication between the parties; the contested issue must have been litigated and necessary to the judgment earlier rendered. (Énfasis suplido.) *Kaspar Wire Works, Inc. v. Leco Engineering & Mach.,* 575 F.2d 530, 535–536 (5to Cir. 1978).

En cuanto a las consecuencias jurídicas de ambos conceptos, se ha expresado que:

> *Prior judgments may preclude later litigation both as to matters that have actually been litigated and decided and as to matters that have never been litigated or decided.* It is both

conventional and convenient to encourage careful attention to the fundamental differences between these effects by referring to them under distinctive labels. The rules that control efforts to reopen matters that have been decided respond to the obvious desire to avoid repetitive consideration of the very same problems. These rules are commonly described as the rules of issue preclusion or collateral estoppel, and will be discussed later. *The rules that preclude any litigation of matters that have never been litigated or decided respond to more complex desires to force the parties to raise them in their first suit on pain of subsequent forfeiture.* These rules defining the matters that ought to have been raised are most conveniently described as the rules of claim preclusion and defense preclusion, or as the rules of merger and bar.

As useful as the distinction between issue and claim preclusion may be, it is important to note that the distinction is not complete. Foreclosure of an issue by prior litigation may often extend beyond the supporting arguments actually made to preclude new arguments that never were made. The distinction is one of emphasis and degree, no more. (Notas al calce omitidas y énfasis suplido.) *Wright, Miller & Cooper*, supra, Sec. 4406, págs. 43–44.

Cuando se alega, como en este caso, que la causa de acción ha sido adjudicada en un litigio anterior, nos hallamos ante *la figura de "claim preclusion"*:

The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, *the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." Cromwell v. County of Sac*, 94 U.S. 351, 352 [24 L.Ed. 195]. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment. (Énfasis suplido.) *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 578–579 (1974), citando a *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948).

El término *"claim or cause of action"* es uno similar al que bajo nuestra doctrina de cosa juzgada conocemos como causa o razón de pedir.(6) En el proceso de delimitar el alcance de una "causa de acción" y de precisar su contenido, la jurisprudencia utiliza y recurre al uso flexible de varios criterios. En *Restatement Second of Judgments*, supra, Sec. 24, pág. 196, se expresa que la dimensión de una "causa de acción":

(1) ... includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Poco importa si los pleitos sucesivos se originan bajo leyes diferentes. No es la "etiqueta" lo que determina el contenido de la reclamación (*claim*). Puede existir una sola causa de acción aunque ambos pleitos se invoquen bajo leyes diferentes. Lo importante no es la ley en la que se funda la reclamación, sino la causa o razón para reclamar, es decir, el asunto planteado. *Fleming v. Travenol Laboratories, Inc.*, 707 F.2d 829 (5to Cir. 1983); *Harrington v. Vandalia-Butler Bd. of Ed.*, 649 F.2d 434 (6to Cir. 1981); *Nolen v. Roudebush*, 549 F.2d 341 (5to Cir. 1977); *Clemens v. Central Railroad Company of New Jersey*, 399 F.2d 825 (3er Cir. 1968), *cert.* denegado, 393 U.S. 1023 (1969); *Williamson v. Columbia*

---

(6) Véanse: *A & P Gen. Contractors v. Asoc. Caná*, 110 D.P.R. 753, 765 (1981); *Lausell Marxuach v. Díaz de Yáñez*, 103 D.P.R. 533, 536 (1975); *Mercado Riera v. Mercado Riera*, 100 D.P.R. 940, 951 (1972); *Colón v. San Patricio Corporation*, 81 D.P.R. 242, 271 (1959).

*Gas & Electric Corp.*, 186 F.2d 464 (3er Cir. 1950), *cert.* denegado, 341 U.S. 921 (1951); *Wright, Miller & Cooper*, supra, Sec. 4411. La definición es una transaccional, en la que sólo es pertinente que ambas acciones·surjan de un núcleo común de hechos operacionales (*common nucleus of operative facts*), que sea una repetición fáctica (*factual clone*) o que ésta surja de una misma conducta, transacción u ocurrencia. *Wright, Miller & Cooper*, supra, Sec. 4407, pág. 62 y casos allí citados. Un cambio de leyes no evita la aplicación de la norma de *claim preclusion*, pues es lo mismo lo litigado; "solamente son diferentes bases legales invocadas para proveer remedio". (Traducción nuestra.) *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 559 (5to Cir. 1983).

█ Se trata, pues, de un concepto que no está atado a la fuente legal de la obligación y remedio, y que esencialmente persigue que en un solo litigio se obtengan los remedios a que tienen derecho las partes; impide así el fraccionamiento de la causa de acción que comprende reclamos al amparo de teorías legales distintas.

C. El asunto se complica cuando, *como en el presente caso*, un demandante opta por radicar una demanda en el tribunal local bajo las disposiciones del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, y otra demanda en el foro federal bajo las disposiciones de 42 U.S.C. secs. 1981, 1983, 1985 y 1986.

█ Como es sabido, el Tribunal Supremo de Estados Unidos ha resuelto específicamente que los tribunales estatales tienen *jurisdicción concurrente* sobre pleitos bajo la Ley Federal de Derechos Civiles. De manera, pues, que el tribunal de instancia tenía facultad en el presente caso para entender en todas las reclamaciones. *Acevedo v. Srio. Servicios Sociales*, 112 D.P.R. 256, 259–260 (1982); *Martínez v.*

*California*, 444 U.S. 277, 283 n. 7 (1980); *Maine v. Thiboutot*, 448 U.S. 1, 3 n. 1 (1980).

█ Por otro lado, y en lo que respecta a los tribunales federales, éstos, al asumir jurisdicción en un caso bajo una causa de acción federal, pueden —bajo la doctrina de *pendent jurisdiction*— adjudicar reclamaciones relacionadas sobre las cuales, de ordinario, no tendrían jurisdicción para poder adjudicar, *Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984).

█ Para que un tribunal federal asuma *pendent jurisdiction* sobre una causa de acción estatal, la reclamación federal debe ser lo suficientemente sustancial como para conferir al tribunal jurisdicción sobre la materia. *Mine Workers v. Gibbs*, ante. Esta sustancialidad se determina a base de las alegaciones (*pleadings*) independientemente de la disposición ulterior del caso. Si la reclamación federal es sustancial, el tribunal puede considerar todas las reclamaciones, estatales o federales, que surjan del mismo núcleo común de hechos operacionales (*common nucleus of operative facts*) siempre que hubiera sido de esperarse que el demandante las litigara todas en un solo procedimiento judicial. 13B *Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters (Federal Question Jurisdiction—Diversity Jurisdiction)*, 2da ed., Sec. 3567.1, págs. 114–116 (1984).

█ Si el demandante no solicita del tribunal federal que asuma jurisdicción al amparo de la doctrina de *pendent jurisdiction* sobre la reclamación estatal, la sentencia que en su día emita el tribunal federal tendría el efecto de cosa juzgada sobre ésta bajo la teoría de *claim preclusion* por cuanto pudiendo haberse hecho la solicitud, no se hizo. Ahora bien, si a pesar de ello haberse solicitado, el tribunal federal

334

decide no entender en la reclamación estatal, o si estaba impedido de hacerlo,(7) la sentencia federal no constituiría cosa juzgada sobre el reclamo estatal. *Restatement Second of Judgments* supra, Sec. 25(e); *Wright, Miller & Cooper*, supra, Vol. 18, Sec. 4412, págs. 95–97; 3A *Moore's Federal Practice* Sec. 18.07(1.4), pág. 1864 (1987).

Opinamos que los demandantes en el presente caso tenían un reclamo federal sustancial bajo la citada Sec. 1983 (42 U.S.C.). Tenemos, en adición, que ambos reclamos —el federal y el estatal —surgían de los mismos hechos, transacción o evento: las agresiones físicas y daños a la propiedad alegadamente infligidos a los demandantes por los alguaciles demandados al éstos tratar de desahuciar ilegalmente a los demandantes. La evidencia a ser desfilada en este caso es la misma que habría sido presentada en el tribunal federal.

 Somos del criterio que el tribunal federal tenía jurisdicción para considerar la acción bajo el Art. 1802 del Código Civil, *supra*, conjuntamente con la reclamación bajo la Ley Federal de Derechos Civiles *excepto, naturalmente, en cuanto a la del Estado Libre Asociado de Puerto Rico y sus agencias*, las cuales están vedadas por la Enmienda XI de la Constitución federal, L.P.R.A., Tomo 1. Así lo determinan consideraciones de economía procesal y de trato justo a los litigantes. Predominaba la cuestión federal, es decir, la alegada violación de los derechos civiles de los demandantes y el jurado podía considerar ambas controversias, sumamente entrelazadas, sin peligro de confundirse en su adjudicación. *Mine Workers v. Gibbs*, ante, pág. 725.(8)

---

(7) *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984).

(8) "Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . .,' U.S. Const., Art. III, Sec. 2, and the relationship between that claim and the state

■ Son los demandantes los únicos responsables de que el tribunal federal no ejerciera jurisdicción sobre la reclamación bajo la ley de Puerto Rico. No lo solicitaron.(9) Prefirieron presentar una acción a esos efectos en el Tribunal Superior. Claramente, fraccionaron su causa de acción. *Restatement Second of Judgements*, supra, Sec. 25; R.C. Casad, *Res Judicata in a Nutshell*, Minnesota, Ed. West, 1976, pág. 57.(10) Se arriesgaron a que una de las acciones

---

claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. *Levering & Garriguez Co. v. Morrin*, 289 U.S. 103. The state and federal claims must derive from a common nucleus of operative facts. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." (Notas al calce omitidas.) *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

(9) En *Wright, Miller & Cooper*, supra, Sec. 4412, pág. 96, al discutirse la interrelación entre *pendent jurisdiction* y la doctrina de *res judicata* se afirma que:

"The response is persuasively made that the plantiff *should be required* to invoke pendent jurisdiction *unless it is clearly inappropriate*. Assertion of the state theories with the federal theories will put the federal court in a position to determine whether the interests of all concerned are better advanced by a single federal action or by a parallel state and federal actions." (Énfasis suplido.)

(10) Como antes señalamos, en algunas ocasiones ese fraccionamiento es inevitable, al menos con respecto a algunos aspectos de la controversia. En el caso de autos, por ejemplo, el Estado Libre Asociado no podía ser demandado en el tribunal federal porque la Enmienda XI a la Constitución de Estados Unidos, L.P.R.A., Tomo 1, lo impide. *Fernández v. Chardón*, 681 F.2d 42 (1er Cir. 1982), confirmada por otros motivos en *Chardón v. Fumero Soto*, 462 U.S. 650 (1983); *Enrique Molina-Estrada v. Puerto Rico Hwy. Auth.*, 680 F.2d 841 (1er Cir. 1982).

No podemos concluir que este fraccionamiento pudo haber sido evitado por el tribunal federal si éste hubiera declinado ejercer su jurisdicción hasta tanto el tribunal local resolviera la reclamación estatal colateral. El tribunal federal no podía hacerlo. No existían las claras circunstancias excepcionales necesarias para ello. *Colorado River Water Cons. Dist. v. U.S.*, 424 U.S. 800 (1976). *Preclusion in Abstention Analysis*, 53 Fordham L. Rev. 1183 (1985).

En primer lugar, la acción era una bajo la Ley Federal de Derechos Civiles, 42 U.S.C. sec. 1981 *et seq.* No podemos olvidar que a pesar de que los tribunales estatales tienen jurisdicción concurrente sobre las reclamaciones bajo esa ley — *Maine v. Thiboutot*, 448 U.S. 1, 3 n. 1 (1980); *Martínez v. California*, 444 U.S.

fuera resuelta en su contra y se convirtiera en cosa juzgada la otra reclamación. *Woods Exploration & Pro. Co. v. Aluminum Co. of Amer.*, 438 F.2d 1286, 1311–1316 (5to Cir.), *cert.* denegado, 404 U.S. 1047 (1971); *Cemer v. Marthon Oil Co.*, 583 F.2d 830 (6to Cir. 1978); *Zoriano Sánchez v. Caribbean Carriers Ltd.*, 552 F.2d 70, 72–73, (2do Cir.), *cert.* denegado, 434 U.S. 853 (1977); *cf. Buford v. American Finance Company*, 333 F. Supp. 1243, 1249 (A.D. Dist. Ct. 1971). Debe mantenerse presente que lo determinante bajo la norma federal de *res judicata* es cuál de los dos foros fue el primero en emitir sentencia y no cuál de ellos fue el primero en asu-

277, 283–284 n.7 (1980); *Acevedo v. Srio. Servicios Sociales*, 112 D.P.R. 256, 259–260 (1982) — la misma se aprobó en 1871 porque el Congreso "no confiaba en los tribunales estatales para adjudicar imparcialmente las reclamaciones constitucionales. Temía que los jueces locales fueran muy susceptibles a las simpatías, los prejuicios y las influencias de la comunidad". (Traducción nuestra.) Comentario, *The Collateral Estoppel Effect of State Criminal Convictions in Section 1983 Actions*, 1975 U. Ill. L. F. 95, 98–99 (1975). Afortunadamente, la situación hoy en día es diferente. Los tribunales estatales adjudican constantemente las reclamaciones federales que se les presentan. Los rencores de la era de la reconstrucción han quedado atrás. Sin embargo, persiste el propósito de la Sec. 1983 de que los ciudadanos tengan disponible el foro federal para dilucidar sus controversias al amparo de la Constitución federal. "La protección de los derechos individuales, y no el federalismo o la economía judicial, fue el propósito central del Congreso" al aprobar la Sec. 1983. (Traducción nuestra.) Comentario, *supra*. Ninguna corte en esta controversia asumió jurisdicción sobre propiedad alguna y el foro federal no era menos conveniente para litigar el asunto. Por el contrario, como hemos señalado, el Congreso contempló que este tipo de acciones fuera litigado mayormente en los tribunales federales. La ausencia de estos factores en lugar de aconsejar la suspensión de los procedimientos en el Tribunal Federal de Distrito sugería lo contrario. *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26 (1983).

En segundo lugar, los procedimientos en el Tribunal Superior de Puerto Rico no estaban lo suficientemente adelantados como para hacer más conveniente la litigación allí de estos asuntos. "[L]a prioridad no debe ser medida exclusivamente a base de cuál demanda se presentó primero, sino en términos de cuánto progreso ha sido alcanzado en las dos acciones." (Traducción nuestra.) *Moses H. Cone Hospital v. Mercury Constr. Corp.*, ante, pág. 21.

Por último, la realidad es que la sentencia federal ya es final y firme. No podemos negarle ahora efectos a esa sentencia, dictada por un tribunal con jurisdicción, y en la que los demandantes tuvieron una oportunidad plena y adecuada para litigar sus reclamaciones contra los alguaciles codemandados.

mir jurisdicción. *Restatement Second of Judgements*, supra, Sec. 13 (1982); 1B *Moore's Federal Practice* Sec. 0.404 (1988).

D. Resta considerar si en principio es aplicable la doctrina de cosa juzgada al caso ante nuestra consideración en relación con aquellas partes demandadas en el pleito local que también lo fueron en la acción federal.

■ De entrada, basta referirnos a los epígrafes y alegaciones que se hicieran en ambas acciones. En ambos casos comparecen como demandantes, reclamando para sí, Francisco Ramos González, su esposa María Reyes Santiago y la Sociedad Legal de Gananciales compuesta por ambos. En ambos casos comparecen como demandados, en su carácter personal, Perfecto Cruz Laureano, José Ramón González y Manuel Ramos Rivera. Siendo ello así, se configura en ambos pleitos y, con relación a estas personas únicamente, la identidad de litigantes que requiere la doctrina. El hecho de que hubiera además otros codemandados no es óbice para llegar a esta conclusión. *Staten Island Rapid Transit Op. Auth. v. I.C.C.*, 718 F.2d 533, 542–543 (2do Cir. 1983); *Duncan v. Town of Blacksburg Virginia*, 364 F. Supp. 643, 645 (Va. Dist. Ct. 1973); *Wright, Miller & Cooper*, supra, Sec. 4449, págs. 416–417. No se equivocó, en su consecuencia, el Tribunal Superior al considerar aplicable la norma de cosa juzgada en cuanto a estos tres codemandados.[11]

■ No obstante, el tribunal a quo cometió error al incluir en su análisis y conclusión sobre cosa juzgada a la demandada Marta Cruz de Laureano así como a la Sociedad Legal de Gananciales compuesta por ésta y por el codemandado Perfecto Cruz Laureano. Claramente, en cuanto a estas

---

[11] Llegaríamos al mismo resultado bajo la doctrina puertorriqueña. *De León v. Colón*, 42 D.P.R. 22, 28 (1931).

partes no se cumple el requisito de identidad.(12) Marta Cruz de Laureano y la referida sociedad fueron demandadas únicamente en el pleito radicado en el foro local, mas no así en el presentado ante el tribunal federal. Han sido objeto, directa y particularmente, en el pleito local de ciertas alegaciones que les imputan la comisión de actos dañosos mediando culpa o negligencia.(13) El codemandado Perfecto Cruz Laureano no representó en el pleito federal a la Sociedad Legal de Gananciales de la cual forma parte y que ésta no fue incluida como parte demandada en dicha acción. No había reclamo alguno en contra de la misma. Una relación familiar estrecha con una parte, de ordinario, no es suficiente para aplicarle a alguien que no ha sido parte en un pleito la doctrina de cosa juzgada. *Wright, Miller & Cooper*, supra, Sec. 4459, pág. 522. Véanse: *Díaz v. Navieras de P.R.*, 118 D.P.R. 297 (1987); *Pauneto v. Núñez*, 115 D.P.R. 591, 596–597 (1984); *Irizarry v. Díaz Ojea*, 35 D.P.R. 144, 146 (1926); Sentencia del Tribunal Supremo de España de 31 de mayo de 1913, citada en J.M. Manresa y Navarro, *Comentarios al Código Civil Español*, 6ta ed. rev., Madrid, Ed. Reus, 1967, Vol. 8, T. II, pág. 315. En *Díaz v. Navieras de P.R.*, ante, no le aplicamos la defensa de cosa juzgada a codemandantes parientes cercanos del demandante —padre y madre— que no litigaron en la acción de daños que culminó en la sentencia que se invocó con efecto de cosa juzgada, ya que la relación de parentesco no era suficiente para establecer la solidaridad requerida.

---

(12) No nos hallamos ante una situación en que los demandados en el pleito federal representaban a los que no fueron incluidos allí (*privity*). Los alguaciles fueron demandados en el tribunal federal en su capacidad personal. No representaban a nadie más en el pleito.

(13) Tampoco hay identidad de partes en cuanto a los demás codemandados. Por esa razón, la demanda contra éstos no ha sido desestimada.

 Aclaramos que recurrimos en esta situación al Derecho Civil *por cuanto la norma federal de res judicata requiere que al evaluar problemas de representación familiar como el señalado se acuda al derecho estatal.* Esto se debe a que el Derecho de Familia es un asunto que tradicionalmente ha estado permeado de un interés estatal intenso que controla las reglas al respecto. *Wright, Miller & Cooper,* supra, Sec. 4459, pág. 523.

Cumplidos los requisitos de identidad de causa y partes —en cuanto a los demandantes y los codemandados Perfecto Cruz Laureano, José Ramón González y Manuel Ramos Rivera— podría anticiparse el resultado final de esta situación. Empero, es menester traer a colación ciertas consideraciones provenientes de la norma federal de *res judicata* que alteran la disposición final de este recurso.

## IV

 La doctrina federal de cosa juzgada está cimentada sobre el interés en preservar la finalidad, efectividad y certidumbre de las sentencias. Por eso se ha resuelto repetidamente que una sentencia tiene efectos de cosa juzgada aunque sea errónea. *E.g. Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398–399 (1981), y casos allí citados. Como dijo el Profesor Brainerd Currie, "la primera lección que uno debe aprender en la materia de *res judicata* es que las determinaciones judiciales no deben ser confundidas con la verdad absoluta". (Traducción nuestra.) B. Currie, *Mutuality of Collateral Estoppel: Limits of the "Bernhard" Doctrine,* 9 Stan. L. Rev. 281, 315 (1957).

 El ordenamiento ha provisto el mecanismo de la revisión judicial precisamente para lograr la corrección de los errores judiciales y a su vez evitar la relitigación de los mismos asuntos en pleitos separados posteriores. *Baltimore S.S. Co. v. Phillips,* 274 U.S. 316, 325 (1927). Ese interés en

establecer un balance entre la finalidad de la sentencia y su corrección *hace que la regla general tenga unas muy reducidas excepciones a ser aplicadas en circunstancias muy limitadas y particulares.* Los tribunales no favorecen las repetidas declaraciones ad hoc acerca de la eficiencia, corrección y justicia de las sentencias, pues ello afectaría el valor y la finalidad de las sentencias en general al propiciar la relitigación masiva de las controversias ya adjudicadas. Debe mantenerse presente que la mera simpatía por la posición de alguna de las partes no es suficiente para perturbar el reposo de una controversia adjudicada.

 Por supuesto, a pesar de esa inquietud, lo cierto es que persisten las razones excepcionales que hacen que en contadas ocasiones la finalidad de una sentencia deba ser descartada. Una de ellas se da cuando la sentencia anterior causa una injusticia grave y manifiesta a la parte afectada.[14] Por supuesto, no se trata de dejar sin efecto una sentencia final por el mero hecho de que parezca errónea ni de expresar simpatías hacia una parte debido a su situación. Una decisión basada en consideraciones de ese tipo podría lesionar el debido procedimiento de ley al que tiene derecho la parte favorecida por la primera sentencia. *Cf. Goldblatt v. Hempstead*, 369 U.S. 590, 597 (1962). El derecho requiere que exista un *interés público* tras la decisión de relevar a una parte de una sentencia previa manifiestamente injusta que de ordinario tendría efectos de cosa juzgada.

En el caso de autos está presente un interés de esa naturaleza: la pureza de los procedimientos judiciales y la confianza en sus instituciones. Estas consideraciones trascienden los intereses particulares de los aquí litigantes. *E.g. Kinnear-Weed Corporation v. Humble Oil & Refining Com-*

---

[14] La regla en el Derecho puertorriqueño reconoce también esta excepción. *Pérez v. Bauzá*, 83 D.P.R. 220, 226 (1961); *P.I.P v. C.E.E.*, 120 D.P.R. 580 (1988).

*pany*, 403 F.2d 437, 439–440 (5to Cir. 1968).(15) Las alegaciones de los demandantes imputan actos graves a tres funcionarios de la Rama Judicial. Somos del criterio que sentaríamos un mal precedente si permitiéramos que lo que a fin de cuentas es un tecnicismo procesal derrotara por segunda vez la reclamación contra estos tres codemandados. La imagen de la judicatura y justicia puertorriqueña sufriría un daño irreparable si permitiéramos que una norma jurídica, que después de todo nunca ha sido absoluta, derrote una reclamación de unos ciudadanos contra tres funcionarios de esta rama del Gobierno que, alegadamente, intentaron aprovecharse de su posición como tales. Invocamos nuestras palabras en *Berríos v. U.P.R.*, 116 D.P.R. 88, 94 (1985):

> Todo proceso adjudicativo se orienta a hallar la verdad y hacer justicia. *J.R.T.* v. *Aut. de Comunicaciones*, 110 D.P.R. 879, 884 (1981). Nuestra función es darle vigencia a la norma conforme a este elemento teleológico en su aplicación a casos concretos. *García Negrón* v. *Tribunal Superior*, 104 D.P.R. 727, 729 (1976).

Entendemos que estamos ante un caso peculiar que justifica que, por excepción, nos apartemos de la rigurosa aplicación de la doctrina de cosa juzgada. Resolvemos que el *interés público* en mantener nuestro sistema de justicia libre de cualquier apariencia de parcialidad, aunque ésta sea infundada, sobrepasa el interés de mantener la finalidad y eficacia de las sentencias de otras jurisdicciones, sobre todo cuando consideramos que la sentencia dictada en el pre-

---

(15) En *Kinnear-Weed Corporation v. Humble Oil & Refining Company*, 403 F.2d 437, 439–440 (5to Cir. 1968), el Tribunal Federal de Apelaciones de Estados Unidos para el Quinto Circuito expresó que:

"But, as we several times make clear, this is a matter which transcends the interests of the parties. The purity of the judicial process and its institutions is the thing at stake. Whatever might be the usual consequences of res judicata, collateral estoppel or doctrines akin to them, we reject them here. They are not a bar or defense here or below."

sente caso fue una de desestimación por inacción y no una emitida después de un juicio plenario, y que bajo el estado actual de derecho en el foro federal local, una sentencia de esa naturaleza ya no tiene el efecto de una adjudicación en los méritos.

V

Por lo expresado en la parte IV de esta opinión, *revocamos la sentencia desestimatoria del tribunal de instancia y ordenamos que prosiga el caso contra los codemandados Perfecto Cruz Laureano, José Ramón González y Manuel Ramos Rivera*. Además, por los fundamentos expuestos en la parte III-D de esta opinión, *resolvemos que continúen los procedimientos contra la codemandada Marta Laureano de Cruz y la Sociedad Legal de Gananciales compuesta por Perfecto Cruz Laureano y la señora Laureano de Cruz. Proseguirán también los procedimientos contra los otros codemandados contra quienes la acción no había sido desestimada. Se dictará sentencia de conformidad.*

La Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Hernández Denton concurren con el resultado sin opinión escrita. El Juez Presidente Señor Pons Núñez se inhibió.