Miranda De Hostos, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
La parte apelante John Politis, acude de una sentencia sumaria final dictada por el Tribunal de Primera Instancia, Sala de Río Grande, a favor de la parte apelada Gabriel Reyes Albandoz y su esposa Iris Rodríguez Bayley así como la sociedad legal de gananciales compuesta por ambos, que desestimó una demanda en cobro de dinero que él presentara. Además, el tribunal de instancia le impuso a la parte apelante el pago de costas y $2,000.00 por concepto de honorarios de abogados.
Alega en síntesis la parte apelante que erró el tribunal de instancia, al no concluir que la controversia sobre la devolución de la opción a compra ya había sido dilucidada ante la Corte de Quiebras y, por lo tanto, aplicaba la doctrina de res judicata y procedía el cobro de dinero.
Vencido en exceso el plazo concedido a la parte apelada para presentar su alegato, se revoca la sentencia apelada, por los siguientes fundamentos.
I
Los esposos Reyes-Rodríguez, eran dueños en pleno dominio de una finca rústica en el Bo. Herrera en Río Grande denominada como Parcela A y de un predio de terreno en el Bo. Jiménez denominada como Parcela B, ubicada en dicha ciudad. (Ap. I, págs. 23-24.) Es un hecho incontrovertido que los esposos Reyes-Rodríguez, habían proyectado la segregación de un predio de terreno de veintidós (22) cuerdas de la Parcela A y la Parcela B completa, para el desarrollo y ubicación de un centro comercial. (Ap. 1, pág. 25.)
El 1 de abril de 1991, los esposos Reyes-Rodríguez, le cedieron mediante contrato de opción el derecho a comprar el predio de terreno a ser segregado de la Parcela A y la Parcela B, para un total de 26.485 cuerdas a Shopping Centers Group (en adelante Shopping Centers). Los esposos Reyes-Rodríguez recibieron la cantidad de $5,000.00, por la opción, la cual fue depositada en una cuenta plica, que sería aplicada al precio de compraventa final.
*807 El contrato de opción a compra de los esposos Reyes-Rodríguez y Shopping Centers otorgado el 1 de abril de 1991, -el cual luego se hizo formar parte de la escritura de compraventa- establece entre otros términos lo siguiente:
-DOS:-El término de este Contrato es hasta que se obtengan o no de forma fmal y firme todas las aprobaciones y todos los permisos para el desarrollo y construcción del Centro Comercial. La COMPRADORA tendrá el término de sesenta días (60) a partir de dicha aprobación o denegación final para ejercer el derecho de opción concedido por este Contrato. De no ejercer el derecho en dicho término la COMPRADORA retendrá el depósito en la cuenta de Plica relacionado en el párrafo UNO.-TRES:-De ejercer el derecho de opción dentro del periodo de sesenta (60) días concediendo la COMPRADORA depositará la cantidad de CUARENTA Y CINCO MIL DOLARES ($45,000.00) [...] y las partes se obligan a suscribir las correspondientes escrituras y/o documentos necesarios para perfeccionar el negocio jurídico dentro del término de sesenta (60) días contados a partir de la notificación por parte de la COMPRADORA de su decisión de ejercer su derecho. Disponiéndose que de existir cualquier defecto en el título de la propiedad, el término de SESENTA (60) DIAS para firmar las escrituras se considerará a partir de la fecha en que los VENDEDORES notifiquen a la COMPRADORA por correo certificado que el título de la propiedad esta libre de defectos.

[...]

.-SEIS:- El precio total de venta de las propiedades objeto de este Contrato con una cabida total de VEINTISEIS PUNTO CUATROCIENTOS OCHENTA Y CINCO (26.485) CUERDAS, será la suma de CIENTO UN MIL CIENTO SETENTA DOLARES ($101,170.00) por cuerdas para un total aproximado de DOS MILLONES SEISCIENTOS SETENTA Y NUEVE MIL CUATROCIENTOS OCHENTA Y SIETE DOLARES CON [SIC] CUARENTA Y CINCO CENTAVOS ($2,679,487.45) que serán pagados de la siguiente manera:-— ....-A.-La cantidad de CINCO MIL DOLARES ($5,000.00) pagados de acuerdo con el contrato del primero (1ro.) de abril de 1991.--B.-La cantidad de CUARENTA Y CINCO MIL DOLARES ($45,000.00) que se pagarán al momento de ejercer la opción.---C.-El remanente del precio o sea la cantidad, DOS MILLONES SEISCIENTOS VEINTINUEVE MIL CUATROCIENTOS OCHENTA Y SIETE DOLARES CON CUARENTA Y CINCO CENTAVOS ($2,629,487.45) será pagadera en su totalidad al momento del cierre..

[■■■]

.-NUEVE:-En caso de la COMPRADORA no ejercer su derecho a comprar en el plazo estipulado, perderá la cantidad de CINCUENTA MIL DOLARES ($50,000.00) depositada más los intereses devengados en consideración a este contrato, determinándose que esta cantidad de dinero es considerada como una suma líquida, por el tiempo que han reservado la propiedad los VENDEDORES para vender la misma a la COMPRADORA y por los daños causados debido al no cumplimiento de este contrato.

[...]

.DOCE:-Manifiestan las partes que es condición de esta opción que se obtengan los permisos necesarios para dedicar la propiedad al uso para el cual la adquiere la COMPRADORA; que los terrenos objetos de esta transacción no sean clasificados como Zona Inundable I; que el Cuerpo de Ingenieros de los Estados Unidos de Norteamérica no adquiera jurisdicción sobre los terrenos; que el costo del relleno para sacar el terreno de Zona Inundable no exceda de TRESCIENTOS MIL DOLARES ($300,000.00); que el interés preferencial (“prime rate”) al momento del cierre exceda del Doce Porciento [sic] (12%); y que se obtengan los arrendatarios anclas (“anchor tenants”) para los locales comerciales que estarán disponibles; disponiéndose 
*808
que de no obtenerse los correspondientes permisos, que los terrenos objetos de esta transacción sean clasificados como Zona Inundable I; que el Cuerpo de Ingenieros de los Estados Unidos de Norteamérica adquiera jurisdicción sobre los terrenos; que el costo del relleno para sacar el terreno de Zona Inundable exceda de CINCUENTA MIL DOLARES ($50,000.00) pagada como consideración de este Contrato le será devuelta a la COMPRADORA, al finalizar el término de este Contrato y las parte quedarán relevadas de cualquier responsabilidad.

[...]”

(Ap. 1, pág. 26-30.)
El 13 de diciembre de 1991, los esposos Reyes- Rodríguez, suscribieron otro contrato de compraventa con Charles Jerry Kerry, representante y tesorero de Rico Shopping Centers, Inc. (en adelante Rico) en el cual se incluía y cedían como condición la opción a compra del predio de terreno de veintidós (22) cuerdas, que se había acordado con Shopping Centers el 1 de abril de 1991. El aquí apelante John Politis, adquirió el 20 de diciembre de 1995, el crédito de Rico.
Los esposos Reyes-Rodríguez para el año 1993, comenzaron a confrontar problemas económicos por lo que presentaron ante la Corte de Quiebras para el Distrito de Puerto Rico una petición de quiebras al amparo del Capítulo 11 de la Ley de Quiebras. Estando los esposos Reyes-Rodríguez bajo la protección de la Ley de Quiebras, Rico inició un procedimiento adversativo contra los esposos Reyes-Rodríguez con el propósito de recuperar los daños sufridos, por éstos querer anular el contrato de compraventa.
Finalmente, el 2 de febrero de 1995 la Corte de Quiebras celebró una vista oral en la cual los esposos Reyes-Rodríguez y Rico, llegaron a una estipulación que le daba finalidad a la controversia surgida entre las partes respecto al contrato de compraventa, de modo que se le pudiera dar finalidad a todas sus reclamaciones. Al día siguiente, 3 de febrero de 1995, Rico y los esposos Reyes-Rodríguez presentaron ante dicho foro una moción titulada “Stipulation” en la cual las partes acordaron reinstalar los efectos del contrato de compraventa suscrito entre las partes el 13 de diciembre de 1991 y al cual le modificaron los siguientes términos y condiciones:
"[...]

2. Term and conditions are modified as follows:

A. Clause #2 is modified to clarify that buyer in exercising the option effective February 2, 1995, and as to the existence of zoning permit, issued by the Planning Board, dated November 2, 1994, authorizing the construction of the commercial center.

B. Clause #3 is modified because the option is exercised. With respect to disbursements required to exercise the option, they will be made as follows:

a) Rico will provide the needed authorization to withdraw $5,000.00 in escrow accounts with First Federal Savings Bank.

b) Four payments of $11,250 each will be made on February 15, 28, March 15 and 30, 1995.

c) The deposit can be used by debtor, as debtor in possession, and/or with Court approval, and debtor will grant, with Court approval, a super priority to Rico in the event closing does not take place because of the contingencies mentioned on the contract.

*809
Closing must be consummated in 180 days, provided all contingencies are met.

d) Clause #6 is modified to conform with amendments to Clause #3.

e) Clause #9, #10 and 11 are clarified to establish that the option has been exercised, effective February 2, 1995.

f) Clause #12 is modified to clarify that the Army Corp of Engineers assumed jurisdiction. The buyers will make all reasonable effort to mitigate and will assume the cost of mitigations. Seller will sell additional “cuerdas” to buyer in the Northeast corner of the property at the river bend, as margeland [sic], at appraised value, by an appraiser mutually selected by the parties.

g) Clarify in Clause #15 that jurisdiction rests with the Bankrupcy Court. (Enfasis suplido.)

[...]”

(Ap.3, pág. 52-53.)
El 12 de junio de 1995, la Corte de Quiebras aprobó finalmente la estipulación presentada ante su consideración en dicho pleito. Además, como parte del contrato de estipulación y del contrato de compraventa, Rico desembolsó a la parte apelada Reyes-Rodríguez la cantidad de $38,750.00 por concepto de depósito para ejercer la opción a compra. El 26 de septiembre de 1995, Rico presentó ante la Corte de quiebras una moción titulada “Motion to Withdraw Offer to Purchase; and Request for Determination as to Superpriority”, mediante la cual dicha parte le informó a la Corte de Quiebras lo siguiente:

1. As appears under the terms of the Stipulation in Adv. No. 93-0101; on February 2, 1995, Rico exercised an Option for the purchase of certain plot of land property of the estate, described in the Stipulation and other related documents.

2. The Court approved the Stipulation and Option Agreement.

3. Pursuant to the terms of the Option Agreement, Rico has advanced to debtor $38,750.00.

4. During 1995, market conditions have drastically changed in Puerto Rico generally and, specifically, in the Rio Grande area and appearing party has been unable to secure anchor tenants needed for the development of the shopping center as planned.

5. Under Clause #12 of the Option Agreement (Purchase Contract), the obtention of anchor tenants is a condition of the option Agreement and if said anchor tenants are not obtained, all consideration will be returned to buyer (Rico).” (Enfasis suplido.)
(Ap. 5, pág. 56-57.)
El 22 de enero de 1996, la Corte de Quiebras emitió una orden declarando con lugar la moción titulada “Motion to Withdraw Offer to Purchase; and Request for Determination as to Superpriority”, presentada por Rico en la cual retiraron su oferta de compra y le solicitaron al tribunal de quiebras que le concedieran un estatus prioritario a Rico para el cobro de $40,000.00, como indemnización apropiada de acuerdo a las circunstancias del caso. (Aps. 5 y 15, págs. 56-58 y 146, Docket for Case 93-00451, Entry No. 156.)
*810 Finalmente, el 20 de junio de 1997, la Corte de Quiebras, desestimó la petición de quiebras hecha por la parte apelada Reyes-Rodríguez. (Ap. 15, pág. 150, Docket for Cases 93-00451, Entry No. 201.) No obstante, el 7 de marzo de 2000, la parte apelante John Politis, Presidente y Secretario de Rico, presentó ante el Tribunal de Primera Instancia, Sala de Río Grande, demanda en cobro de dinero contra los esposos Reyes-Rodríguez así como contra la Sociedad Legal de Gananciales compuesta por ambos. La parte apelante alegó en la demanda que la parte apelada Reyes-Rodríguez había desistido de su petición de quiebra y que por lo tanto le adeudaban la cantidad de $38,750.00 por concepto de lo pagado por la opción de compra. Además, alegó que adquirió el crédito de Rico, de una asignación de cuentas hecha por la compañía el 20 de diciembre de 1995. (Ap. 1, págs. 1-4.)
La parte apelada Reyes-Rodríguez contestó la demanda y expuso que Rico había ejercido su derecho de opción, pero no compró la propiedad objeto del negocio dentro del término convenido en el contrato de compraventa perdiendo así la suma que pagó como precio de la opción. (Ap. pág. 12.) Además, que una vez Rico ejerció su derecho de opción estaba obligada a comprar la propiedad para el centro comercial dentro del término fijado en el contrato, según el mismo fue modificado por la estipulación en la Corte de Quiebras. (Ap. 4, págs. 10-12.) Por último, sostuvo que Rico actuó de manera contradictoria al ejercer la opción, en cuya fecha aceptó que se cumplían las condiciones que hacían posible el contrato, para luego invocar falsamente la ausencia de una de las condiciones de la cláusula 12 como excusa para rescindir el contrato de compraventa.
Luego de innumerables trámites procesales, la parte apelante John Politis, presentó ante el tribunal de instancia moción de sentencia sumaria, alegando que según los términos y condiciones del contrato de opción a la parte apelada se le adelantó la cantidad de $38,750.00 y que finalmente la opción no se ejercitó debido a que no se consiguió un arrendatario ancla, una de las razones por las cuales a tenor con lo dispuesto en la cláusula 12 del contrato se puede rescindir el contrato. (Ap. 5, págs. 14-21.) Por ello, la parte apelante solicitaba que dictara sentencia sumaria a su favor y que le ordenara a la parte apelada Reyes-Rodríguez pagar los $38,750.00 que le fueron adelantados por concepto de la opción.
La parte apelada Reyes-Rodríguez se opuso a dicha moción de sentencia sumaria y presentó una moción de sentencia sumaria, alegando que los términos del contrato de compraventa suscrito entre las partes y la estipulación en la Corte de Quiebras que modificó el mismo, disponía que se tenía que cumplir con la obligación de consumar el contrato de compraventa so pena de perder los $50,000.00 que tenía que pagarle a la parte apelada por la opción.
Que el término de 180 días al cual estaba sujeta la opción, pasó sin que Rico hubiera cumplido con su obligación de otorgar la escritura de compraventa y pagado el balance del precio convenido. (Ap. 6, págs. 63-75.) Además, expresó que durante ese término de tiempo, Rico tampoco le reclamó a los esposos Reyes-Rodríguez que hubiera ocurrido una de las circunstancias que le hubiera liberado de su obligación de comprar con derecho al reembolso de la opción, como era su obligación hacerlo. A su vez alegó la parte apelada que la parte apelante Rico no tenían los arrendatarios anclas y que hizo esta alegación tardíamente ante la Corte de Quiebras, luego de haber transcurrido 239 días contados a partir del 2 de febrero de 1995, fecha en que Rico había ejercido su opción a compra. (Ap. 7, págs. 67-97.)
Así las cosas, el Tribunal de Primera Instancia dictó sentencia sumaria a favor de la parte apelada Reyes-Rodríguez, procedió a la desestimación de la demanda en cobro de dinero y condenó a la parte apelante John Politis al pago de costas y $2,000.00 por concepto de honorarios de abogados.
Inconforme, la parte apelante John Polits, presentó ante nos recurso de apelación.
II
Expuestos los hechos pertinentes, procedemos a exponer la norma jurídica aplicable a los aspectos *811 sustantivos.
Como primer error, alega la parte apelante John Politis que incidió el tribunal de instancia al no concluir que esta controversia de la demanda había sido dilucidada ante la Corte de Quiebras y que era de aplicación la doctrina de res judicata sobre la misma y procedía el cobro de dinero.
Le asiste la razón. Veamos porqué.
A
La Ley de Quiebas
La presentación de una solicitud de quiebra ante la Corte de Quiebras de los Estados Unidos, tiene el efecto de crear un "estate" o caudal, y la paralización automática de todo procedimiento o actuación contra la persona o entidad que presenta la solicitud. El Código de Quiebras especifica los bienes del deudor que constituyen parte del "estate". 11 U.S.C. see. 541.
Una vez se hace la solicitud de quiebra, surge la paralización automática ("automatic stay") de todo procedimiento o actuación contra una persona o entidad que presenta una solicitud de quiebra ante la Corte de Quiebras. 11 U.S.C. sec. 362(a). La paralización automática tiene un efecto inmediato y es aplicable, inter alia, a cualquier entidad que inicie o continúe, cualquier acción civil contra el deudor, o solicite la ejecución de una sentencia contra el deudor y no se requiere que la Corte de Quiebras emita una orden a esos efectos, como tampoco requiere notificación alguna para que surta efectos erga omnes.
Las reclamaciones posteriores a la fecha de presentación del caso solamente se afectarán en la medida en que el acreedor, reclamante o persona con interés, intente ejecutar su reclamación sobre los bienes pertenecientes al caudal. El caudal es una entidad distinta del deudor que se crea por virtud de la Ley de Quiebras en el momento en que se presenta una solicitud o petición. Tan pronto se crea, la Corte de Quiebras tiene jurisdicción sobre todos los bienes del deudor que presenta la petición, no importa el lugar donde se encuentren. Id.
B
Las estipulaciones y las transacciones judiciales
El artículo 1709 del Código Civil, dispone que:

“La transacción es un contrato por el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado.”

31 L.P.R.A. see. 4821.
Se consideran dos clases de contratos de transacción, el judicial y el extrajudicial. El contrato de transacción extrajudicial es aquel que se pacta antes de comenzar un pleito, en el cual las partes acuerdan eliminar la controversia mediante un acuerdo. Por otro lado, si la controversia degenera un pleito y luego de este haber comenzado, las partes acuerdan eliminar y solicitan incorporar el acuerdo al proceso judicial en curso, estamos ante un contrato de transacción judicial que tiene el efecto de finalizar el pleito. Ñeca Mortg. Corp. v. A & W Dev. S.E., 137 D.P.R. 860, 870-871 (1995).
En la transacción judicial por ser un contrato, deben concurrir los requisitos de consentimiento de los contratantes, que son las partes en el pleito; objeto cierto, que es el pleito instado; y la causa, que consiste en el acuerdo y concesiones concedidas por las partes, para dar por terminado el pleito. Art. 1213, Código Civil, 31 *812 L.P.R.A. sec. 3391; Neca Mortg. Corp. v. A. & W Dev. S.E., supra, pág. 871.
Cuando se perfecciona un contrato, las partes se obligan a lo expresamente pactado y “[a] todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley”. Art. 1210, Código Civil; 31 L.P.R.A. see. 3375; Irizarry López v. García Cámara, opinión de 27 de noviembre de 2001, 2001 J.T.S. 164, 455; Colondres Vélez v. v. Bayrón, 114 D.P.R. 833, 837 (1983).
Una vez acordada la transacción judicial y aprobada por el tribunal, “[tjiene para las partes la autoridad de la cosa juzgada Art. 1715, Código Civil, 31 L.P.R.A. sec. 4827; Igaravidez v. Ricci, 147 D.P.R. 1, 6 (1998). Cuando una parte no cumple con lo estipulado en una transacción judicial, se le puede solicitar al tribunal que lo convenido se lleve a efecto y ejecute, pues lo acordado es vinculante a las partes, según sus alcances. Igarávidez López v. Ricci Asencio, supra; Neca Mortg. Corp. v. A & W Dev. S.E., supra, pág. 872.
C
La doctrina de cosa juzgada en el ámbito interjurisdiccional
La doctrina de cosa juzgada así como su modalidad de impedimento colateral por sentencia, persiguen como propósitos proteger a los litigantes contra lo que representa defenderse o probarse sus reclamaciones en repetidas ocasiones tratándose de la misma controversia, además, promover la economía judicial al evitar litigios innecesarios ya adjudicados y decisiones inconsistentes. Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. 212, 218 (1992).
En nuestro ordenamiento jurídico civil, la doctrina de cosa juzgada está tipificada en el artículo 1204 del Código Civil de Puerto Rico, el que dispone que:

Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron.

31 L.P.R.A. sec. 3343.
El artículo 221 del Código de Enjuiciamiento Civil, establece que el efecto de un dictamen judicial ante el foro local o federal, con jurisdicción, será concluyente entre las partes, cuando se dan los requisitos antes esbozados de identidad de partes, las cosas, las causas y la calidad en que lo fueron. 32 L.P.R.A. see. 1793.
Para determinar si aplica la doctrina de cosa juzgada se debe analizar: (1) el tipo de acción de que se trata; (2) si la sentencia previa es de un tribunal de jurisdicción limitada; (3) el fundamento jurisdiccional que tiene dicho tribunal para entender en el asunto; (4) el derecho sustantivo resuelto (si es uno federal o estatal) y (5) el fundamento utilizado para resolver el caso (si fue procesal, sustantivo o una combinación de ambos). Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. 212, 216 (1992); Díaz Maldonado v. Lacot, 123 D.P.R. 261, 272 (1989).
Bajo las normas federales y las de Puerto Rico, se considera cosa juzgada no sólo las cuestiones litigadas y adjudicadas, sino también aquellas que pudieron haberse litigado y adjudicado con propiedad, aun cuando no fueron planteadas. Díaz Maldonado v. Lacot, supra, pág. 274. (Casos y autoridades citadas.)
Se ha establecido que cuando la decisión federal se dicta al amparo de una reclamación o asunto federal, la *813 norma o doctrina de cosa juzgada que controla el asunto en el Estado, como fuente de ley al respecto, es la ley federal. Esto es así para preservar la supremacía y finalidad de la decisión inicial, basada en las leyes del foro que la dictó. Rodríguez Rodríguez v. Colberg Comas, supra; Ramos González v. Félix Medina, 121 D.P.R. 312, 327 (1988).
La doctrina de cosa juzgada requiere que estén presentes ciertos requisitos, éstos son: (1) que haya una primera sentencia válida, final y firme que adjudique los hechos y resuelva una controversia en sus méritos; (2) que las partes en el primer litigio sean las mismas en el segundo; (3) que en ambos pleitos se trate del mismo objeto o asunto; (4) que en el primer pleito se haya pedido igual remedio que el que se pide en el segundo; y (5) que las partes litiguen en la misma calidad en ambos pleitos. Art. 1204, Código Civil, supra; Banco de la Vivienda v. Carlo Ortiz, 130 D.P.R. 730,738-739 (1992).
La jurisprudencia también ha reconocido la figura jurídica del impedimento colateral por sentencia, como una modalidad de la doctrina de cosa juzgada, en la cual no resulta necesaria la identidad de causas. Acevedo v. Western Digital Caribe, Inc., supra; A & P Gen. Contractors v. Asoc. Caná, 110 D.P.R. 753, 763 (1981). El impedimento colateral por sentencia opera:

“[...] cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final...[y] tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas."

Fatach v. Triple S, Inc., 147 D.P.R. 882, 889 (1999); A & P Gen. Contractors, supra, pág. 762.
El impedimento colateral por sentencia presenta dos modalidades: la ofensiva que el demandante le impide al demandado el relitigar otra vez los asuntos que previamente litigó y perdió, y la defensiva, cuando el demandado le impide a un demandante que litigue un asunto que ya previamente perdió. Fatach v. Triple S, Inc., supra, pág. 891.
D
La sentencia sumaria
Cualquier parte en el pleito podrá presentar una moción basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de la reclamación. Regla 36.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III; Sánchez Montalvo v. Autoridad de los Puertos, opinión de 7 de marzo de 2001, 2001 J.T.S. 34, pág. 967; HMCA v. Contralor, 133 D.P.R. 945, 955 (1933).
La sentencia sumaria persigue el propósito de obtener un remedio rápido y eficaz, cuando la parte promovente acredita que no existe una controversia genuina en relación con los hechos materiales del litigio y que procede como cuestión de derecho. Jusino Figueroa v. Walgreens, opinión de 1 de noviembre de 2001, 2001 J.T.S. 154, pág. 374.
E
Aplicación del derecho a los hechos del caso
Alega la parte apelante John Politis, que incidió el Tribunal de Primera Instancia al no aplicar la doctrina de cosa juzgada en su modalidad ofensiva, cuando ya la controversia planteada en la demanda había sido adjudicada a su favor en la Corte de Quiebras.
Le asiste la razón y el derecho.
*814 La parte apelada Reyes-Rodríguez, presentó ante la Corte de Quiebras dos (2) peticiones de quiebras al amparo del Capítulo 11 de la Ley de Quiebras Federal, a los cuales se les asignaron los números de casos 93-00451 y 93-00452. En dicho procedimiento de quiebras, Rico presentó un procedimiento adversativo contra los esposos Reyes-Rodríguez, con el propósito de recuperar los daños alegadamente sufridos a consecuencia de la parte apelada querer evitar la ejecución del contrato de compraventa suscrito entre ellos.
El 26 de septiembre de 1995, Rico presentó una moción titulada “Motion to Withdraw Offer to Purchase; and Request for Determination as to Superpriority”, en la cual informaba que había ejercido la opción a compra el 2 de febrero de 1995, dentro del plazo dispuesto de ciento ochenta (180) días. No obstante, que las circunstancias del mercado en Puerto Rico habían cambiado en específico en el área de Río Grande y que no se tenían seguros los arrendatarios anclas necesarios para el desarrollo del centro comercial planificado, por lo que según la cláusula 12 del contrato de arrendamiento, todas las consideraciones debían ser devueltas. (Ap. 5, págs. 56-58.) Ante ello, le solicitó al foro federal que le concediera un estatus prioritario para el cobro de la cantidad de $40,000.00 por concepto de daños y el dinero dado en adelanto. El 22 de enero de 1996, la Corte de Quiebras declaró con lugar dicha moción, concediéndole a la parte aquí apelante el remedio solicitado.
No obstante, estando ya adjudicada la controversia sobre el crédito que posee la parte apelante respecto al cobro del dinero dado en adelanto por concepto del contrato de opción a compra, ésta presentó el 7 de marzo del 2000, en el Tribunal de Primera Instancia, una demanda en cobro de dinero contra la parte apelada, por la cantidad antes mencionada.
De conformidad con lo anteriormente expuesto hay que concluir que aplicaba la doctrina de cosa juzgada o res judicata, referente a querer litigar los alcances del contrato y la cláusula de opción. Primero, a pesar de que el caso de autos se trata de una acción en cobro de dinero la misma estaba incluida en la del procedimiento adversativo presentado ante la corte federal dentro del procedimiento de quiebras, pues el mismo formaba parte del “estate” o caudal sujeto a dicho procedimiento. Segundo, la adjudicación hecha por el foro federal respecto al crédito de $40,000.00 a favor de la parte apelante fue emitido por un tribunal de jurisdicción limitada. Tercero, que por tratarse de parte del caudal sujeto a la quiebra, el único foro que tenía derecho para entender es ese asunto era la Corte de Quiebras. Cuarto, el derecho sustantivo resuelto fue uno estatal dentro de un procedimiento federal de quiebras. Quinto, el fundamento utilizado por la Corte de Quiebras para resolver la controversia planteada con relación al pago de la opción, fue uno tanto procesal como sustantivo.
Luego del análisis anteriormente expuesto, concluimos que lo adjudicado por la Corte de Quiebras, respecto a la concesión del crédito a la parte apelante del dinero pagado por la opción es cosa juzgada, pues ya dicho foro había hecho una adjudicación válida, final y firme, y a favor del aquí apelante. Sobre tal controversia existe identidad de partes, la causa de acción del segundo pleito formó parte del procedimiento de quiebras, en el primer pleito se pidió un remedio similar al segundo pleito y las partes litigaron en la misma calidad, la de deudor y acreedor.
Si la parte apelada Reyes-Rodríguez alegaba algún tipo de objeción a la solicitud hecha por la parte apelante en el foro federal, en la moción de retiro de oferta y determinación de estatus prioritario, tenía que hacerlo dentro del procedimiento de quiebra y no como una defensa dentro del procedimiento en cobro de dinero presentado ante el tribunal de instancia. Del expediente ante nuestra consideración no surge que la parte apelada dentro del procedimiento de quiebras, se hubiera opuesto a la solicitud de la parte apelante y mucho menos de que hubiera solicitado reconsideración de la determinación del foro federal sobre el retiro de la opción y el pago de ésta, por lo que la misma advino final y firme.
Cónsono con lo anteriormente expuesto, incidió el tribunal de instancia como cuestión de derecho al no aplicar la doctrina de res judicata en su modalidad ofensiva de impedimento colateral por sentencia y proceder *815 a adjudicar nuevamente la controversia que ya había sido dilucidada por el foro federal a favor del apelante y desestimar la demanda en cobro de dinero.
III
Por los fundamentos anteriormente expuestos, se revoca la sentencia apelada en su totalidad, emitida por el Tribunal de Primera Instancia, Sala de Río Grande, pues aplica como cuestión de derecho la doctrina de cosa juzgada en su modalidad ofensiva de impedimento colateral por sentencia.
Se devuelve el caso a dicho foro para que adjudique la demanda en cobro de dinero a favor de la parte apelante John Politis representante de Rico Shopping Centers, Inc.
Lo acordó y ordena el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General