El Juez Asociado Señor Kolthoff Caraballo
emitió la opinión del Tribunal.
En el presente caso nos corresponde determinar si cuando un demandado levanta en su primera alegación responsiva, la defensa afirmativa de cosa juzgada en su modalidad de impedimento colateral se debe entender que igualmente levantó la modalidad de fraccionamiento de causa de acción.
Asimismo, se nos brinda la oportunidad de aclarar la doctrina de cosa juzgada en su modalidad de fracciona-miento de causa de acción, así como expresamos sobre la aplicación inteijurisdiccional y la jurisdicción suplementa-ria (accesoria) en el foro federal de dicha doctrina.
Por entender que el Tribunal de Apelaciones erró en sus determinaciones, revocamos la sentencia recurrida. Pase-mos, pues, a exponer los hechos que dieron origen a la con-troversia planteada en el caso de epígrafe.
I — I
Las partes involucradas en este litigio son la peticiona-ria Presidential Financial Corp. of Florida (Presidential) y la recurrida Transcaribe Freight Corp. (Transcaribe). Presidential es una corporación domiciliada en el estado de Georgia, que se dedica a ofrecer servicios de financia-miento comercial. Transcaribe es una corporación organi-zada y existe según las leyes del estado de Delaware, con operaciones en Puerto Rico, que se dedica al transporte y almacenamiento de mercancía y bienes.
*268 El 6 de julio de 2005, Presidential concedió un préstamo de capital de trabajo a International World Imports & Exports, Inc. (International World) por $1,500,000.(1) International World es una corporación domiciliada en Puerto Rico, que se dedica a la importación y exportación de productos. Miguel Toyéns (Toyéns), presidente de International World, representó a dicha corporación en la transac-ción con Presidential y sirvió de garantizador del repago de la deuda. International World le indicó a Presidential que estaba pendiente de recibir ochocientos noventa transfor-madores eléctricos en las instalaciones de Transcaribe, y para poder liberarlos tenía que pagarle a Transcaribe. Presidential solicitó evidencia sobre dicha deuda a International World. Acorde con lo anterior, Toyéns entregó a Presidential un documento titulado Bill of Lading P-0315(2) de Transcaribe por $1,000,496.10, el cual resultó ser falso.(3)
El 15 de julio de 2005, Presidential efectuó dos transfe-rencias electrónicas a la cuenta bancaria de Transcaribe por $1,000,496.10 y $475,503.(4) El 18 de julio de ese mismo año, Transcaribe, por instrucciones de Toyéns, giró un cheque por $1,000,496.10 a favor de International World,(5) con el conocimiento de que para esa fecha ni To-yéns ni International World adeudaban cantidad alguna a la corporación. Dos meses más tarde, nuevamente por ins-trucciones de Toyéns, Transcaribe giró un cheque por $475,503 a favor de Toyéns en su carácter personal(6) A pesar de tratarse de un depósito millonario inusual, Trans-caribe realizó dichos desembolsos sin hacer gestión alguna
*269 para comunicarse ni obtener instrucciones de Presidential. (7)
En octubre de 2005, personal de Presidential viajó a Puerto Rico para indagar sobre la falta de pago del prés-tamo concedido a International World. En ese momento Presidential se percató de los desembolsos que realizó Transcaribe a International World y a Toyéns. Presidential acudió a las oficinas de Transcaribe y los confrontó con el Bill of Lading P-0315 que International World le había entregado. Transcaribe comparó el documento con los ar-chivos de la empresa y confirmó que era falso.(8)
Ante esta situación, el 13 de octubre de 2005, Presidential presentó una demanda en cobro de dinero contra International World y Toyéns en el Tribunal Federal para el Distrito de Puerto Rico (Tribunal Federal).(9) El foro federal asumió jurisdicción de esa causa de acción por existir diversidad de ciudadanía.(10) En dicho pleito, Presidential recuperó parcialmente los fondos que éstos no habían pagado. La suma no recuperada por Presidential mediante dicha demanda asciende a $838,302.05.
Así las cosas, el 25 de septiembre de 2006, Presidential presentó una demanda en el Tribunal de Primera Instan-cia, Sala Superior de Carolina, contra Transcaribe. En la misma solicitó la indemnización por actos y/u omisiones *270 negligentes y/o culposos realizados por Transcaribe que le ocasionaron daños y perjuicios.(11) En la demanda, la peti-cionaria planteó que Transcaribe incurrió en negligencia al no contactar ni comunicarse con Presidential para indagar sobre las razones de la transferencia millonaria realizada, conociendo que no correspondían a ninguna suma adeudada. Indicó, además, que en ausencia de deuda, Transcaribe debió actuar diligentemente y comunicarse con Presidential para solicitar instrucciones en cuanto al destino de los fondos transferidos. Alegó que, como resul-tado de esas actuaciones y/u omisiones negligentes y/o cul-posas, sufrió daños y pérdidas económicas que se estiman en $838,302.05. De esta forma, la peticionaria pidió al tribunal de instancia que dictara sentencia en contra de Transcaribe.
El 13 de febrero de 2007, Transcaribe contestó la demanda. Entre sus defensas afirmativas levantó la de-fensa de impedimento colateral por sentencia(12) Luego, el 30 de junio de 2008, Transcaribe presentó una moción de sentencia sumaria.(13) Por primera vez, en dicha moción, Transcaribe mencionó la defensa de fraccionamiento de causa de acción, pero no la fundamentó(14) Finalmente, el tribunal celebró el juicio en su fondo y declaró “con lugar” la demanda. Así, ordenó a Transcaribe que pagara los da-ños ocasionados y le impuso el pago de intereses por temeridad. En particular, el Tribunal de Primera Instancia *271 expresó que Transcaribe, al recibir fondos que no tenía de-recho a cobrar y en ausencia de instrucciones por parte de Presidential, debió actuar con la diligencia de un buen padre de familia.(15) A su vez, el foro de instancia indicó que la obligación y el deber de Transcaribe antes de entregar los fondos a International World era indagar sobre su origen y obtener instrucciones del depositante previo a su disposición.(16)
Inconforme con la sentencia del Tribunal de Primera Instancia, Transcaribe presentó una moción de reconsideración. En la misma levantó la defensa de cosa juzgada en su modalidad de fraccionamiento de causa y por primera vez la fundamentó. Transcaribe alegó que el caso de autos se basa en los mismos hechos que dieron lugar a la demanda en el Tribunal Federal, por lo que Presidential tenía la obligación de incluir en la demanda federal a todo demandado que entendía que podía ser responsable.(17) El foro de instancia declaró “no ha lugar” la moción de reconsideración. Como resultado de lo anterior, Transcaribe presentó un recurso de apelación ante el Tribunal de Apelaciones en el cual solicitó la revocación de la sentencia del Tribunal de Primera Instancia. Mientras, la aquí peticionaria, Presidential, presentó su alegato y soli-citó la confirmación de la decisión recurrida.
Expedido el auto, el Tribunal de Apelaciones revocó la determinación del foro de instancia y ordenó la desestima-ción de la causa de acción. Esto, fundamentado en su in-terpretación de la doctrina de cosa juzgada en su modali-dad de fraccionamiento de causa de acción. El foro apelativo intermedio indicó que en la demanda llevada ante el Tribunal Federal, Presidential no incluyó a Trans-caribe como parte, teniendo conocimiento de su participa-
*272 ción en los hechos en que basó su reclamación. (18) En su sentencia, el Tribunal de Apelaciones señaló lo siguiente:
Habida cuenta de la exacta identidad entre las partes y la causa de acción, advenida luego sentencia final adjudicando en los méritos las controversias, Presidential está impedido ahora de incoar nueva acción contra Transcaribe en el Foro local para reclamar lo mismo que reclamó a nivel federal y por los mismos fundamentos que allí esgrimió. (Enfasis suplido.)(19)
En desacuerdo con la decisión del Tribunal de Apelacio-nes, Presidential solicitó reconsideración, mas ese foro de-negó su petición. Así, la peticionaria recurrió ante esta Curia mediante una solicitud de certiorari en la que señaló los siguientes errores:
[.1] Erró el Tribunal de Apelaciones al desestimar la causa de acción incoada por Presidential contra Transcaribe por enten-der que la sentencia en un caso en cobro de dinero en el Tribunal Federal donde Transcaribe no fue parte constituye cosa juzgada, aunque entre el pleito federal y el pleito estatal no existe identidad de causas ni identidad de partes[.]

[2] Erró el Tribunal de Apelaciones al concluir que la falta de sustitución de una parte acumulada bajo un nombre ficticio en un pleito federal constituye un impedimento por razón de fraccionamiento indebido de la presente acción, aunque entre el pleito federal y el pleito estatal no existe identidad de causas ni identidad de partes[.]

[5] Erró el Tribunal de Apelaciones al desestimar la causa de acción incoada por Presidential contra Transcaribe por entender que la sentencia en un caso en cobro de dinero en el Tribunal Federal constituye impedimento colateral por sentencia, aunque entre el pleito federal y el pleito estatal no existe identidad de partes y a pesar de que Presidential prevaleció en el pleito federali.] Petición de certiorari, Pieza 1, pág. 10.(20)
*273 Visto el recurso presentado,(21) dictamos una Resolución en la que le concedimos a la parte recurrida, Transcaribe, un término de treinta días para que compareciera y mos-trara causa por la cual no debíamos revocar la Sentencia dictada por el Tribunal de Apelaciones. Transcaribe pre-sentó un escrito en cumplimiento a nuestra orden, y así, con el caso debidamente perfeccionado, procedemos a expe-dir y resolver el recurso.
i — I HH
A. Doctrina de cosa juzgada y sus modalidades de impedi-mento colateral y fraccionamiento de causa de acción
En nuestro ordenamiento jurídico, la doctrina de cosa juzgada se encuentra tipificada en el Art. 1204 del Código Civil.(22) El referido artículo dispone, en lo pertinente, lo siguiente:
Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los liti-gantes y la calidad con que lo fueron.
El tratadista español Manresa define la doctrina antes citada como “ ‘lo ya resuelto por fallo firme de un Juez o Tribunal competente, y lleva en sí la firmeza de su irrevo-cabilidad’ ”.(23) Por lo tanto, y según lo anterior, la doctrina de cosa juzgada “persigue poner fin a los litigios luego de haber sido adjudicados de forma definitiva por los tribuna-les y, de este modo, garantizar la certidumbre y seguridad *274 de los derechos declarados mediante una resolución judicial para evitar gastos adicionales al Estado y a los litigantes”. Worldwide Food Dis., Inc. v. Colón et al., 133 D.P.R. 827, 833-834 (1993).
La doctrina de cosa juzgada es valiosa y necesaria para la sana administración de la justicia. Por un lado, vela por el interés gubernamental de que se finalicen los pleitos y, por otro lado, se interesa en no someter a los ciudadanos a las molestias de tener que litigar dos veces una misma causa(24) Sin embargo, la aplicación de dicha doctrina no procede de forma inflexible y automática cuando hacerlo derrotaría los fines de la justicia o las consideraciones de orden público(25)
Como bien dispone el Art. 1204 del Código Civil, supra, la presunción de cosa juzgada sólo tendrá efecto si existe la más perfecta identidad de las cosas, las causas, las perso-nas de los litigantes y la calidad con que lo fueron. A con-tinuación analizamos cada elemento de esta doctrina.
Para aplicar la doctrina de cosa juzgada, el requisito de la identidad de cosas significa que el segundo pleito se refiere al mismo asunto del que versó el primer pleito, aunque las cosas se hayan disminuido o alterado(26) La cosa es el objeto o materia sobre la cual se ejercita la acción. A & P Gen. Contractors v. Asoc. Caná, 110 D.P.R. 753 (1981). Un criterio certero para determinar si existe identidad del objeto es si un juez está expuesto a contradecir una decisión anterior afirmando un derecho nacido o naciente(27) Quiere decir que existe identidad de objeto *275 cuando un juez, al hacer una determinación, se expone a contradecir el derecho afirmado en una decisión anterior. Se tiene que identificar cuál es el bien jurídico cuya protec-ción o concesión se solicita del juzgador. Hay que conside-rar no sólo la cosa sobre la cual se suscita la controversia, sino también el planteamiento jurídico que se genera en torno a ella.(28)
En cuanto al requisito de identidad de causas, según interpretado por Manresa,(29) este “significa el fundamento capital, el origen de las acciones o excepciones planteadas y resueltas, y no debe confundirse con los medios de prueba ni con los fundamentos legales de las pretensiones deducidas por las partes”.(30) Por otro lado, Scaevola nos recuerda que la “causa” es el motivo que tuvo el demandante para pedir.(31) La identidad de causa existe cuando los hechos y los fundamentos de las peticiones son idénticos en lo que afecta a la cuestión planteada. A & P Gen. Contractors v. Asoc. Caná, supra. Al determinar si existe identidad de causas de acción debemos preguntarnos si ambas reclamaciones se basan en la misma transacción o núcleo de hechos.(32)
Por último, en cuanto a la identidad de las personas de los litigantes y la calidad en que lo fueron, el propio Art. 1204 del Código Civil, supra, dispone, en lo pertinente, que,
[s]e entiende que hay identidad de personas siempre que los *276 litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibili-dad de las prestaciones entre los que tienen derecho a exigir-las u obligación de satisfacerlas.
Al considerar este tercer requisito, hemos señalado que los efectos de la cosa juzgada se extienden a quienes intervienen en el proceso, a nombre y en interés propioj(33) En otras palabras, las personas jurídicas que son parte en ambos procedimientos, cumplidos los requisitos de identidad entre las causas y las cosas, serían las mismas que resultarían directamente afectadas por la excepción de la cosa juzgada. (34)
De otra parte, el fraccionamiento de causa de acción e impedimento colateral por sentencia son dos modalidades de la doctrina de cosa juzgada. A continuación analizamos cada una de las modalidades.
1. Impedimento colateral por sentencia
Reiteradamente, hemos señalado que el impedimento colateral por sentencia constituye una modalidad de cosa juzgada.(35) Al igual que la doctrina de cosa juzgada, el impedimento colateral tiene como propósito promover la economía procesal y judicial, proteger a los litigantes contra lo que representa defenderse o probar sus reclamaciones en repetidas ocasiones tratándose de la misma controversia, evitar litigios innecesarios y decisiones inconsistentes. (36)
Ahora bien, el impedimento colateral se distingue de la doctrina de cosa juzgada en que para su aplica- *277 ción no es necesario que se dé el requisito de identidad de causas.(37) Esto significa que la razón de pedir que se pre-sente en una demanda no tiene que ser la misma que se presentó en la demanda anterior. En nuestra reciente de-cisión de Beníquez et al. v. Vargas et al., 184 D.P.R. 210, 225 (2012), reiteramos nuevamente que la doctrina de im-pedimento colateral “ ‘surte efectos cuando un hecho esen-cial para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final [y] tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de ac-ción distintas’ ”. Sin embargo, no procede la interposición de la mencionada doctrina cuando la parte contra la cual se interpone no ha tenido la oportunidad de litigar previa-mente el asunto y no ha resultado ser la parte perdidosa en el litigio anterior. (38)
Por último, es menester señalar que la doctrina de impedimento colateral por sentencia no aplica a asuntos que pudieron ser litigados y determinados en el primer caso y no lo fueron. Su aplicación se limita a aquellas cuestiones que, en efecto, fueron litigadas y adjudicadas.(39)
2. Fraccionamiento de causa de acción
En cuanto a la modalidad de fraccionamiento de causa de acción, hemos expresado que aplica a toda reclamación posterior que se presente entre las mismas partes y sobre el mismo asunto. (40) Es por esto que si un demandante tiene varias reclamaciones, que surgen de un mismo *278 evento, contra un mismo demandado y presenta una de esas reclamaciones, se aplicará esta modalidad si luego de terminado dicho pleito decide presentar otro pleito contra el mismo demandado por las otras reclamaciones.(41) No procede extender esta doctrina a una parte que no fue in-cluida como demandada en el primer pleito.(42) Además, su aplicación se limitará a reclamaciones que son recobrables en la primera acción incoada.(43)
La modalidad de fraccionamiento de causa tiene como propósito promover el fin de las controversias judiciales y evitar las continuas molestias a una parte con la presentación sucesiva de varios pleitos relacionados con el mismo asunto.(44) Por lo tanto, esta modalidad procede cuando el demandante obtiene una sentencia en un primer pleito y luego radica una segunda acción contra la misma parte por otra porción de esa misma reclamación.(45)
B. Aplicación interjurisdiccional de la doctrina de “cosa juzgada”
Cuando se presenta ante el Tribunal de Primera Instancia una sentencia federal final y firme, y se levanta la defensa de cosa juzgada, hay que examinar el fundamento invocado en el foro federal que sustentó la jurisdicción federal. De esta forma podemos determinar si aplica la doctrina de cosa juzgada estatal o la doctrina de cosa juzgada federal.(46) Así, en aquellas circunstancias en las que el Tribunal Federal asumió jurisdicción al amparo de la doctrina de cuestión federal, se aplicará la norma federal de cosa juzgada para impedir que se litigue un caso nuevamente en el foro estatal. En cambio, en aquellas cir- *279 cunstancias en las que el foro federal asumió jurisdicción por diversidad de ciudadanía, se aplicará la norma estatal de cosa juzgada.(47) En Díaz v. Navieras de P.R., 118 D.P.R. 297, 303 (1987), decidimos que
[e]n situaciones como la de autos, en que una corte federal dicta sentencia luego de asumir jurisdicción por diversidad de ciudadanía, la jurisprudencia mayoritaria se inclina a recono-cer que la doctrina estatal es la que gobierna. Esta postura se fundamenta en la premisa básica de que la doctrina de cosa juzgada es materia que pertenece al ámbito de derecho sustantivo y, por ende, rige Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).
La aplicación interjurisdiccional de la doctrina de cosa juzgada se estableció de esta manera para preservar la supremacía y finalidad de la decisión inicial basada en las leyes del foro que la dictó.(48)
De otra parte, se ha establecido que cuando el Tribunal Federal asume jurisdicción en un caso bajo una causa de acción federal, puede asumir jurisdicción suplementaria (accesoria) sobre una causa de acción estatal en la que de ordinario no tendría jurisdicción para adjudicar.(49) Para que el foro federal pueda asumir jurisdicción suplementaria (accesoria) sobre una causa de acción estatal, es necesario que la reclamación federal sea lo suficientemente sustancial como para conferir al tribunal jurisdicción sobre la materia.(50) Si la reclamación federal es sustancial, el tribunal puede considerar todas las reclamaciones, estatales o federales, que surjan del mismo núcleo común de hechos, siempre que hubiese sido de esperar que el demandante las litigara todas en un solo procedi- *280 miento judicial.(51) Si el demandante no solicita al foro federal que asuma jurisdicción suplementaria (accesoria) so-bre la reclamación estatal, la sentencia que en su día emita el foro federal tendría el efecto de cosa juzgada por tra-tarse de un fraccionamiento de causa indebido, ya que se pudo haber hecho la solicitud y no se hizo. Ramos González v. Félix Medina, 121 D.P.R. 312 (1988).
C. Defensa afirmativa de cosa juzgada al amparo de la Regla 6.3 de Procedimiento Civil de 1979(52)
Es importante señalar que las reglas aplicables al caso de autos son las Reglas de Procedimiento Civil de 1979. En nuestro ordenamiento jurídico, la Regla 6.3 de Procedimiento Civil establece las distintas defensas que puede levantar un demandado en su alegación responsiva. Esta regla proviene de la Regla 8(c) de Procedimiento Civil Federal, Fed. R. Civ. P. 8(c).(53) Estas defensas comprenden materia de naturaleza sustantiva y/o materia constitutiva de excusa, por la cual la parte demandada no debe responder a las reclamaciones en su contra. (54) En Díaz Ayala et al. v. E.L.A., 153 D.P.R. 675, 695 (2001), se aclaró que las defensas afirmativas “deben plantearse al responder a una alegación precedente o se entienden renunciadas; deben además ser alegadas en forma clara, expresa y específica”. (Enfasis en el original suprimido y énfasis suplido). Luego, esta expresión fue incorporada en las nuevas Reglas de Procedimiento Civil de 2009(55) por el Comité Asesor Permanente de las Reglas de Procedimiento Civil.
*281 El Prof. Rafael Hernández Colón explica que las defensas afirmativas se tienen que plantear aseverando los hechos que las sustentan.(56) Quiere decir, que si mera-mente se alega la defensa afirmativa, la alegación es insu-ficiente y se entiende que se renunció.(57) Acorde con lo anterior, y en el contexto de la defensa de cosa juzgada y sus modalidades, en Dávila v. P.R. Ry. Light & P. Co., 44 D.P.R. 950, 959 (1933), expresamos que:
“La persona que aduzca la alegación de res judicata [cosa juzgada] debe establecerla mediante preponderancia de evidencia. Para probar la existencia y el contenido de una sen-tencia es necesario presentar, y ellos serían suficientes, los autos del pleito o copia auténtica, y estos hechos no pueden ser establecidos mediante prueba colateral o extrínseca. Además no basta presentar la sentencia solamente sino que ésta debe estar acompañada por el récord en su totalidad, cuando el mismo existe incluyendo el legajo de la sentencia, a menos que, según puede ocurrir con los decretos de equidad, la sen-tencia de la corte contenga una narración que demuestre ple-namente no sólo el hecho de la sentencia sino el alcance y la extensión del impedimento (estoppel) por ella creado.”
De otra parte, hemos advertido que los tribuna-les no pueden levantar motu proprio las defensas afirma-tivas a las que el demandado renunció, excepto por la de-fensa de falta de jurisdicción sobre la materia.(58)
La Regla 6.3 de Procedimiento Civil dispone como defensa afirmativa la doctrina de cosa juzgada. Como defensa afirmativa se debe invocar en la primera alegación responsiva o se entenderá renunciada. Olmeda Nazario v. Sueiro Jiménez, 123 D.P.R. 294 (1989). De igual forma, el impedimento colateral por sentencia y el fraccionamiento de causa de acción son modalidades distinguibles de la
*282 cosa juzgada, por lo que al igual que esta última, constitu-yen defensas afirmativas independientes que se deben plantear cada una en forma clara, expresa y específica en la primera alegación responsiva. Como ya hemos discutido, en caso de que por no haber identidad de causa no pueda levantarse la defensa afirmativa de cosa juzgada, sí se po-dría levantar la modalidad de impedimento colateral. (59) Como señala el Tribunal del Quinto Circuito de Apelaciones Federal en U.S. v. Shanbaum, 10 F.3d 305 (5to Cir. 1994):
Defenses of collateral estoppel and res judicata are not necessarily fungible concepts, and thus pleading one of these defenses does not necessarily signify that other has also been pleaded.
Ill
En el caso de autos, el Tribunal de Apelaciones concluyó que el Tribunal de Primera Instancia incidió al no desesti-mar la causa de acción por la doctrina de cosa juzgada en su modalidad de fraccionamiento de causa. Tal determina-ción fue errada. Nos explicamos.
A. En primer lugar, la interpretación que el distin-guido panel del Tribunal de Apelaciones hizo con relación a la aplicación inteijurisdiccional de la doctrina de cosa juz-gada es errónea. Como hemos señalado, cuando el foro federal asume jurisdicción por diversidad de ciudadanía, no se aplica la norma federal sino la estatal. La norma federal sólo se aplicará cuando el foro federal asuma jurisdicción por cuestión federal. Ahora bien, es importante aclarar que el Tribunal Federal podrá asumir jurisdicción suplementa-ria (accesoria) sobre reclamaciones estatales que surjan del mismo núcleo común de hechos, siempre que hubiera sido *283 de esperar que el demandante las litigara todas en un solo procedimiento judicial. Así las cosas, es necesario pedir permiso al foro federal para que atienda esa causa de ac-ción estatal.
En el caso ante nuestra consideración, el Tribunal Federal asumió jurisdicción por diversidad de ciudadanía contra International World por cobro de dinero. Además de esta causa de acción, Presidential tenía una causa de ac-ción estatal contra Transcaribe por daños y perjuicios. Esta causa de acción estatal contra Transcaribe no surge por los mismos fundamentos que la reclamación contra International World. La reclamación contra International World surgió cuando ésta incumplió con su obligación de pagar el préstamo de capital de trabajo a Presidential. Por el con-trario, la reclamación contra Transcaribe surgió por ésta ocasionarle daños a Presidential por su actuación u omi-sión negligente. Por esta razón, Presidential no tenía que solicitarle al Tribunal Federal que asumiera jurisdicción suplementaria (accesoria) por la causa de acción contra Transcaribe. La doctrina de jurisdicción suplementaria (ac-cesoria) no es vital, como indica el Tribunal de Apelaciones, para determinar si aplica la doctrina de cosa juzgada. Lo único que se tiene que examinar para determinar si pro-cede la doctrina de cosa juzgada estatal o la doctrina de cosa juzgada federal es el fundamento invocado que sus-tentó la jurisdicción federal. Una vez se determina que la jurisdicción en el foro federal se basó en diversidad de ciu-dadanía, la doctrina de cosa juzgada que gobernará será la estatal. Por lo tanto, erró el Tribunal de Apelaciones al aplicar la doctrina de jurisdicción suplementaria (acceso-ria) a los hechos del presente caso.
B. Atendemos, entonces, los errores planteados por la peticionaria; esto es, que el Tribunal de Apelaciones se equivocó al determinar que el Tribunal de Primera Instan-cia debió desestimar la causa de acción contra Transcaribe
*284 por constituir cosa juzgada en su modalidad de fracciona-miento de causa de acción.(60) Sobre dicho asunto, la peti-cionaria plantea que Transcaribe renunció a la defensa afirmativa de cosa juzgada en su modalidad de fracciona-miento de causa por no levantarla en la contestación a la demanda. Además, en la alternativa, plantea que no ocu-rrió fraccionamiento de causa de acción porque no se cum-plen los requisitos de dicha doctrina. Le asiste claramente la razón.
Como hemos señalado, los demandados tienen el deber de levantar todas las defensas afirmativas que entiendan pertinentes en su primera alegación responsiva. En Díaz Ayala v. E.L.A., supra, expresamos que estas defensas tie-nen que plantearlas de manera clara, expresa y específica. También añadimos en ese caso, que las defensas afirmati-vas que no levante el demandado se entenderán renunciadas. Por la importancia de estas expresiones y para que no exista duda al momento de hacer la primera alegación responsiva, se añadieron estas expresiones a las nuevas Reglas de Procedimiento Civil de 2009.(61) Además, hemos expresado que los tribunales están impedidos de le-vantar las defensas afirmativas motu proprio cuando las partes han renunciado a ellas.
En el presente caso, Transcaribe no levantó la defensa de cosa juzgada en su modalidad de fraccionamiento de causa de acción. Sólo se limitó a levantar la modalidad de impedimento colateral por sentencia. Alega, erróneamente, que al levantar la modalidad de impedimento colateral se debe entender que igualmente levantó la modalidad de fraccionamiento de causa, por ser ambas modalidades de cosa juzgada.
*285 Como ya discutimos, a pesar de que el fraccionamiento de causa e impedimento colateral son modalidades de la doctrina de cosa juzgada, estas son defensas afirmativas distintas. Ambas modalidades tienen el mismo propósito, sin embargo, sus requisitos son distintos. La modalidad de fraccionamiento de causa de acción aplica cuando cm de-mandante tiene varias reclamaciones, que surgen de un mismo evento, contra un mismo demandado, pero presenta sólo una de esas reclamaciones y luego en un segundo pleito pretende presentar las otras reclamaciones. En otras palabras, aplica cuando en el segundo pleito se reclama lo que se pudo reclamar en el primer pleito pero no se hizo. Por otro lado, la modalidad de impedimento colateral se utiliza en asuntos que ya fueron litigados y adjudicados, y en el segundo pleito se trae ese mismo asunto, aunque sea bajo otra causa, contra el mismo demandado. En resumen, en la modalidad de fraccionamiento de causa no se ha liti-gado sobre el asunto aunque se pudo haber traído en el primer pleito, y en la modalidad de impedimento colateral ya se litigó sobre el asunto y se trae de nuevo en el segundo pleito.
En el caso de autos, Transcaribe levantó específica y únicamente la defensa de impedimento colateral. No se puede entender que cuando un demandado levanta especí-fica y únicamente la modalidad de impedimento colateral se asuma que levantó igualmente la modalidad de fraccio-namiento de causa de acción. Esto iría en contra de los principios y requisitos que hemos establecido para poder presentar con éxito una defensa afirmativa. Si Transcaribe deseaba levantar la defensa de fraccionamiento de causa de acción debió hacerlo de manera clara, expresa y especí-fica en la contestación a la demanda. Es importante recal-car que Transcaribe mencionó por primera vez, sin argu-mentar ni fundamentar, la defensa de fraccionamiento de causa en la moción de sentencia sumaria que presentó un año y cuatro meses después de su primera alegación *286 responsiva. No es hasta la moción de reconsideración, luego de que el Tribunal de Primera Instancia dictara su sentencia, que Transcaribe mencionó y argumentó la de-fensa de fraccionamiento de causas de acción. No cabe duda que Transcaribe renunció a la defensa de cosa juz-gada en su modalidad de fraccionamiento de causa de acción.
Por lo tanto, el Tribunal de Apelaciones estaba impedido de resolver a favor de la doctrina de cosa juzgada en su modalidad de fraccionamiento de causa de acción, ya que el demandado había renunciado a esa defensa afirmativa al no levantarla en su primera alegación responsiva.
Ahora bien, aún si Transcaribe hubiese presentado a tiempo la defensa de cosa juzgada en su modalidad de frac-cionamiento de causa de acción, dicha doctrina no aplica, ya que no se configuran los requisitos de la misma. Veamos.
La defensa de fraccionamiento de causa de acción, como modalidad de la doctrina de cosa juzgada, requiere la más perfecta identidad entre las causas, las cosas, las partes y la calidad en que lo fueron. Para que exista identidad de partes es necesario que en el segundo pleito el demandante presente una reclamación contra el mismo demandado del primer pleito. No obstante, la doctrina de cosa juzgada es-tablece excepciones en las que el demandado no tiene que ser la misma persona. Estas excepciones son: que el de-mandado sea causahabiente de los demandados del primer pleito, que estén unidos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones.
En el presente caso, Presidential demandó en el foro federal a International World y luego demandó en el foro estatal a Transcaribe. International World y Transcaribe evidentemente no son las mismas partes. Tampoco existen entre ellas alguna de las razones que constituyen excepcio-nes al requisito de identidad de parte. Transcaribe no es causahabiente de International World ni tiene vínculos de *287 solidaridad con esa empresa, como alega. Recordemos que la solidaridad en los contratos no se presume; existirá cuando la ley o el propio contrato indiquen que los deudo-res son solidariamente responsables.(62) En el presente caso no se pactó que Transcaribe e International World fueran deudores solidarios a favor de Presidential y tam-poco existe una ley que lo disponga. International World es responsable ante Presidential por incumplimiento de con-trato y cobro de dinero, mientras que Transcaribe es res-ponsable extracontractualmente por causarle daños y perjuicios. Por lo tanto, erró el Tribunal de Apelaciones al entender que existe la más perfecta identidad de partes en ambos pleitos.
De otra parte, el Tribunal de Apelaciones entendió que existía identidad de causa, ya que en el foro estatal, Presidential reclamó lo mismo que reclamó en el foro federal y por los mismos fundamentos. El foro intermedio determinó que Presidential fraccionó la causa al no sustituir a una parte acumulada bajo un nombre ficticio por Transcaribe. Tampoco le asiste la razón.
Presidential demandó en el foro federal a International World por cobro de dinero porque International World no pagó el préstamo concedido. Luego, en el foro estatal, Presidential demandó a Transcaribe por daños y perjuicios, ya que su actuación negligente le causó daños. Claramente se trata de causas distintas. El motivo que tuvo Presidential en cada reclamación es distinto. En la primera reclama-ción, su motivo fue cobrar el dinero que International World le adeudaba. Por el contrario, el motivo que tuvo Presidential en la segunda reclamación fue que Transca-ribe le indemnizara por los daños que le ocasionó su con-ducta culposa o negligente. El hecho de que Presidential conociera de la existencia de Transcaribe y no lo sustitu-yera por los nombres ficticios que incluyó en la demanda federal, no tiene efecto en la doctrina de fraccionamiento *288 de causa de acción. Transcaribe no era una parte indispensable en el pleito de cobro de dinero contra International World y, por lo tanto, no tenía que ser incluido en la de-manda ante el foro federal.
Como resultado de lo anterior, podemos concluir que tampoco le asiste la razón al foro intermedio sobre esta determinación. La reclamación posterior no fue entre las mismas partes ni sobre el mismo asunto, como dispone la modalidad de fraccionamiento de causa de acción. Se trata de dos demandados independientes con causas de acciones distintas. Por lo tanto, al no configurarse los requisitos de la doctrina de cosa juzgada, es forzoso concluir que no aplica esta doctrina en su modalidad de fraccionamiento de causa de acción.
IV
Por las razones antes expresadas, se expide el auto de “certiorari”, se revoca la sentencia del Tribunal de Apelacio-nes, Región Judicial de Carolina, y se reinstala la sentencia dictada por el Tribunal de Primera Instancia.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton concurrió e hizo constar la expresión siguiente:
El Juez Presidente Señor Hernández Denton concurre úni-camente con los Acápites II A y II C de la Opinión de este Tribunal por entender que el Tribunal de Apelaciones erró al aplicar la doctrina de cosa juzgada en su modalidad de frac-cionamiento de causa. Transcaribe Freight Corp. renunció a esa defensa afirmativa al presentar solamente la defensa de impedimento colateral por sentencia y no especificar y funda-mentar la de fraccionamiento de causa. Una vez resuelta esta controversia, no hubiésemos hecho los pronunciamientos ex-puestos en el Acápite II B ni en el resto de la Opinión que no atienden ese asunto.
Las Juezas Asociadas Señora Rodríguez Rodríguez y Se- *289 ñora Pabón Charneco, y el Juez Asociado Señor Rivera García concurrieron con el resultado sin opinión escrita.

 Apéndice de la Petición de certiorari, págs. 82-90.

 Bill of Lading es un documento efectuado por un transportista (compañía de camiones, ferrocarril, barco o buque de carga de aire) que sirve como acuse de recibo de las mercancías y especifica el acuerdo para el transporte de la mercancía a un destino indicado. Enciclopedia Británica, http://www.britannica.com/EBchecked/ topic/327501/bill-of-lading (última vista el 30 de marzo de 2012).

 Apéndice de la Petición de certiorari, pág. 74.

 Íd., pág. 75.

 Íd., págs. 78-79.

 Íd., págs. 80-81.

 Es necesario señalar que Transcaribe no pudo justificar ninguno de los des-embolsos, salvo que Toyéns le pidió que los hiciera.

 Toyéns falsificó una factura que le emitió Transcaribe en marzo de 2005 por $100 en concepto de almacenaje de mercancía. Esta deuda fue pagada el 2 de junio de 2005.

 Presidential Financial Corp. v. International World Imports & Exports, et al., Civil Num. 05-2087.

 Es importante señalar que, distinto al foro estatal que es de jurisdicción general, el foro federal es de jurisdicción limitada. Quiere decir, que el Tribunal Federal puede asumir jurisdicción en una causa de acción únicamente por:
(1) cuestión federal — cuando la causa de acción surge de la Constitución, ley o tratado federal; o
(2) diversidad de ciudadanía — cuando la causa de acción surge de un estatuto estatal, pero el demandante reside en un estado distinto al que reside el demandado y la cuantía envuelta excede de $75,000.

 Al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141.

 Además, levantó las siguientes defensas afirmativas: (1) las aseveraciones en la demanda no exponen una reclamación que justifique un remedio, (2) la causa de acción está prescrita, (3) los remedios solicitados no proceden como cuestión de hecho y de derecho, (4) no existe nexo causal entre los daños y la reclamación ale-gada, (5) los daños son consecuencia de sus propios actos, (6) los daños y las recla-maciones alegadas en la demanda se debieron exclusivamente a terceras personas, (7) no procede conforme a la doctrina de actos propios, (8) los demandantes no ac-tuaron diligentemente, (9) los daños reclamados son excesivos, (10) el demandante no mitigó los daños, (11) el demandante actuó de mala fe, y (12) la negligencia comparada.

 No surge del expediente qué determinación, si alguna, tomó el Tribunal de Primera Instancia en cuanto a la sentencia sumaria.

 Apéndice de la Petición de certiorari, pág. 37.

 Íd., pág. 58.

 Íd., págs. 58-59.

 Íd., pág. 68.

 Íd., Pieza 2, pág. 426.

 Íd., págs. 425-426.

 Es importante destacar que aunque el Tribunal de Apelaciones explicó la doctrina de impedimento colateral por sentencia en sus fundamentos, no desestimó la causa de acción al amparo de esa doctrina. Por lo tanto, no entraremos a discutir este error.

 Atendida la solicitud de certiorari, se le proveyó “no ha lugar” por incumpli-miento al Reglamento. Así las cosas, el peticionario presentó una moción de reconsideración.

 31 L.P.R.A. see. 3343.

 S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 D.P.R. 133, 153 (2011), citando a J.M. Manresa, Comentarios al Código Civil español, 6ta ed. rev., Madrid, Ed. Reus, 1967, T. VIII, Vol. 2, pág. 278.

 Fonseca et al. v. Hosp. HIMA, 184 D.P.R. 281 (2012); P.R. Wire Prod. v. C. Crespo & Assoc., 175 D.P.R. 139 (2008).

 Fonseca et al. v. Hosp. HIMA, supra; Parrilla v. Rodríguez, 163 D.P.R. 263 (2004).

 Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. 212, 220 (1992), citando a Q.M. Scaevola, Código Civil, 2da ed., Madrid, Ed. Reus, 1958, T. 20, pág. 534.

 Lausell Marxuach v. Díaz de Yáñez, 103 D.P.R. 533 (1975).

 M. Serra Domínguez, en M. Albaladejo, Comentarios al Código Civil y compilaciones forales, 2da ed., Madrid, Ed. Edersa, 1991, T. XVI, Vol. 2, págs. 735-736.

 J.M. Manresa, Comentarios al Código Civil español, 5ta ed. rev., Madrid, Ed. Reus, 1950, T. VIII, Vol. 2, págs.. 237-242.

 Véase Rodríguez Rodríguez v. Colberg Comas, supra.

 Beníquez et al. v. Vargas et al., 184 D.RR. 210, 223 (2012), citando a Scaevola, op. cit., pág. 535.

 Martínez Díaz v. E.L.A., 182 D.P.R. 580 (2011). Véase, además, AVX Corp. v. Cabot Corp., 424 F.3d 28 (1er Cir. 2005).

5) Hernández Pérez v. Halvorsen, 176 D.P.R. 344, 345 (2009), opinión de con-formidad de la Juez Asociada Señora Rodríguez Rodríguez.

 Albaladejo, op. cit., págs. 755-756.

7) Beníquez et al. v. Vargas et al., supra; S.L.G. Szendrey-Ramos v. Consejo Titulares, supra; P.R. Wire Prod. v. C. Crespo & Assoc., supra.

 Beníquez et al. v. Vargas et al., supra; Méndez v. Fundación, 165 D.P.R. 253 (2005).

 J.A. Echevarría Vargas, Procedimiento civil puertorriqueño, BiblioServices, 2010, pág. 343. Véanse, también: Beníquez et al. v. Vargas et al., supra; S.L.G. Szendrey-Ramos v. Consejo Titulares, supra.

 Beníquez et al. v. Vargas et al., supra; P.R. Wire Prod. v. C. Crespo & Assoc., supra.

 U.S. v. International Building Co., 345 U.S. 502 (1953); Tartak v. Tribl. de Distrito, 74 D.P.R. 862 (1953).

 S.L.G. Szendrey-Ramos v. Consejo Titulares, supra; Abengoa S.A. v. American Intl. Ins., 176 D.P.R. 512 (2009).

 Zambrana v. Tribunal Superior, 100 D.P.R. 179 (1971).

 Ramos González v. Félix Medina, 121 D.P.R. 312 (1988).

 Tesorero v. Tribl. Contribuciones y Del Toro, 72 D.P.R. 617 (1951).

 S.L.G. Szendrey-Ramos v. Consejo Titulares, supra.

 Avellanet v. Porto Rican Express Co., 64 D.P.R. 693 (1945).

 Santiago, González v. Mun. de San Juan, 177 D.P.R. 43 (2009).

 Martínez Díaz v. E.L.A., 182 D.P.R. 580 (2011); Santiago, González v. Mun. de San Juan, supra.

 Martínez Díaz v. E.L.A., supra, citando a Santiago, González v. Mun. de San Juan, supra.

 Ramos González v. Félix Medina, supra.

60) íd. Véase, además, 28 U.S.C.A. sec. 1367.

 Díaz Maldonado v. Lacot, 123 D.P.R. 261 (1989).

 32 L.P.R.A. Ap. III.

 J.A. Cuevas Segarra, Tratado de derecho procesal civil, 2da ed., San Juan, Pubs. J.T.S., 2011, T. II, pág. 407.

 Díaz Ayala et al. v. E.L.A, 153 D.P.R. 675 (2001); Cuevas Segarra, op. cit, pág. 408.

 32 L.P.R.A. Ap. V.

 R. Hernández Colón, Derecho procesal civil, 5ta ed., San Juan, LexisNexis, 2010, pág. 251.

 Íd.

 Véase esc. 10 en Álamo v. Supermercado Grande, Inc., 158 D.P.R. 93 (2002).

 Schneider v. Colegio de Abogados de Puerto Rico, 670 F. Supp. 1098 (1987).

 Aun cuando la peticionaria planteó dos errores distintos, el primero esbo-zando que erró el Tribunal de Apelaciones al determinar que existe cosa juzgada, y el segundo esbozando que erró al determinar que existe fraccionamiento de causa de acción, realmente se trata de un sólo error y, por lo tanto, lo atenderemos como uno solo.

 32 L.P.R.A. Ap. V.

 Art. 1090 del Código Civil, 31 L.P.R.A. sec. 3101.